## Chesapeake & Ohio Railway Company v. Honaker, By, Etc.

(Decided November 26, 1920.)

### Appeal from Pike Circuit Court.

1. Railroads—Injuries to Persons on or Near Tracks—Negligence—Contributory Negligence—Questions for Jury.—In an action against a railroad for injury to a child at a place where the company owed the duty to maintain a lookout and to give reasonable warning of the train's approach, evidence examined and questions of negligence and contributory negligence held for the jury.

2. Appeal and Error—Railroads—Injuries to Persons on or Near Tracks—Trial—Instructions.—Where defendant did not offer a qualification of a given instruction or another instruction pre-

senting the theory that defendant was under no duty to warn plaintiff of the approach of the train if plaintiff knew of its approach, defendant cannot complain of an instruction in the usual form telling the jury that it was the duty of defendant to give reasonable warning of the train's approach where there was substantial evidence that plaintiff did not know of its approach, although there was some evidence to the contrary.

3. Railroads—Injuries to Persons on or Near Tracks—Trial—Instructions.—In an instruction telling the jury that if they believed from the evidence that the plaintiff, after receiving or having warning or notice of the train's approach, ran upon the track or so close to it that the injury to him could not have been averted by those in charge of the engine, if reasonably sufficient lookout had been observed, they should find for the defendants, the use of the words, "if reasonably sufficient lookout had been observed," was proper where there was evidence tending to show that plaintiff went upon the track so far ahead of the train that a proper lookout would have enabled defendant to have warned him of the danger, or to have stopped the train in time to have prevented the accident.

4. Railroads—Collisions—Negligence—Last Clear Chance.—Where the accident occurs at a place where the defendant is under the duty to maintain a lookout, plaintiff's. contributory negligence in going upon the track with knowledge of the approach of the train will not defeat a recovery if the defendant, by the exercise of ordinary care, could have discovered his peril in time to have prevented the injury.

5. Railroads—Injuries to Persons on or Near Tracks—Trial—Instructions.—An instruction telling the jury that, although they believed from the evidence that the defendant was. guilty of negligence in the operation of the train and in the injury to plaintiff, yet, if they should further believe from the evidence that plaintiff, when at a safe distance from the track, knew of the approach of the train and with this knowledge went upon the track and was injured, he assumed the risk of the injury, was properly refused because it relieved defendant of all liability even though it might have discovered plaintiff's peril in time to have avoided the injury by the exercise of ordinary care.

6. Appeal and Error—Railroads—Injuries to Persons on or Near Tracks—Instructions.—It is not error to refuse an instruction where there is no substantial evidence on which to base it.

7. Appeal and Error—Railroads—Injuries to Persons on or Near Tracks—Instructions.—In an action for personal injuries occurring at a place where a lookout duty was owing, it was not error to refuse an offered instruction telling the jury that if they believed from the evidence that the fireman was engaged in coaling his engine, the defendant was not liable because of his failure to keep a lookout, it being the settled rule in this state that in cities, towns and thickly settled communities where a lookout duty is required, and the physical conditions are such that a lookout

by the engineer alone is not effective, then it is the duty of the fireman to keep a lookout unless engaged in the performance of a duty no less urgent and necessary for the protection of human life, and the putting in of coal is not such a duty.

8. Damages—$15,000.00 for Loss of Foot Not Excessive.—Considering the increase in the cost of living and the decrease in the purchasing power of a dollar, a verdict for $15,000.00 for injury to a seven year old boy, resulting in the loss of his foot, was not excessive.

WORTHINGTON, COCHRAN, BROWNING & REED and KIRK & KIRK for appellant.

HAMILTON & POLSGROVE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

James Marvin Honaker, an infant suing by his guardian, J. B. Honaker, brought this action against the Chesapeake & Ohio Railway Company and its conductor, engineer and fireman, to recover damages for personal injuries. From a verdict and judgment in favor of plaintiff for $15,000.00, the railway company appeals.

The accident occurred in Pikeville, a town of about 3,000 inhabitants, on the morning of March 17, 1917. The tracks of the railway company run along the northern edge of the town and there are a number of dwelling houses and other buildings on the north side of the right of way. The station is located on the south side of the tracks. Division street, which runs north and south through the town, ends on the south side of the right of way, and at that point the engine stopped on the day of the accident. There are also two tracks at that point with a pathway between them. On the south side of the south track there is another path near the end of the ties. These paths, as well as the tracks, are used by the public in large numbers in going to and from schools and other places. The accident occurred at a point about 225 feet west of Division street, and 270 feet west of the depot. At that point the two tracks come together, and the middle path ends. Plaintiff, his brother and Quincy Milam were *en route* home for the purpose of getting lunch. When they passed the depot the train was standing still. They then ran down the right of way in the direction of their home. When the train started the boys were then

from 50 to 60 feet away, and according to plaintiff and his companions, plaintiff was several feet ahead of the other boys. One of the witnesses for plaintiff says that the boys looked back when the train started, and that plaintiff was behind the other two boys. Upon reaching the end of the path, plaintiff went upon the main track. There was substantial evidence that no warning of the approach of the train was given, and that the fireman was putting in coal at the time. Plaintiff claims that he did not know of the approach of the train until it was nearly on him, and that he caught his foot in the frog. While there was some evidence that when plaintiff came on to the main track the engine was only five or ten feet away, the weight of the evidence is that the train was then 35 or more feet away. There was also proof that the train was going at about five miles an hour, and could have been stopped within a distance of from 20 to 30 feet. The fireman says that he put in some coal at the crossing, and after passing some boys, began again to put in more coal. He did not see or know anything of the accident. The engineer claims that there was a slight curve at the point of the accident, and that his view was obstructed by the engine. He also says that he did not know anything of the accident until he reached the next station.

There was no error in refusing defendant's request for a peremptory instruction. It is conceded that the accident occurred at a place where it was the duty of the defendant to maintain a lookout and give reasonable warning of the train's approach. There was substantial evidence that no warning was given, and that the fireman was engaged in putting in coal, besides certain circumstances tending to show that the engineer himself was not keeping a lookout. There was also evidence tending to show that defendant's failure in these respects was the proximate cause of plaintiff's injury. If a proper warning had been given, the child might not have gone on the track, and there are circumstances from which it could be reasonably inferred that, even after plaintiff went on the track, the accident could have been avoided by the exercise of ordinary care, if a proper lookout had been kept. Hence, the questions of negligence and contributory negligence were for the jury.

In addition to other instructions not material, the court gave the following instructions:

1. "The court instructs the jury that if they believe from the evidence the tracks and premises of the defendant, Chesapeake & Ohio Railway Company, at the point in question, were habitually used by the public at the time the plaintiff was injured, and the presence of persons on the track at that time and place was reasonably to be expected, then it was the duty of the defendant railway company's servants in charge of the engine in question to give reasonable warning of its approach by blowing the whistle or ringing the bell, and to keep a reasonable lookout in front of the engine as it moved. It was incumbent on the plaintiff to exercise reasonable care to look out for approaching trains and to keep out of the way. And, if you believe from the evidence that reasonable warning of the approach of the engine was not given or reasonable lookout was not kept, and by reason of this plaintiff's foot was run upon or other parts of his body injured by said engine while he was exercising reasonable care to discover and keep out of the way of the engine, you should find for the plaintiff. Unless you so believe and find, you will find for the defendants.

2. "If the jury believe from the evidence that the plaintiff after receiving or having warning or notice of the approaching engine ran upon the track or so close to it that the injury to him could not have been averted by those in charge of the engine, if reasonably sufficient lookout had been observed, you should find for the defendants.

4. "If you believe from the evidence that the plaintiff himself was negligent in the sense that he failed to exercise the degree of care for his own safety usually exercised by persons of his age, experience, intelligence and discretion, and by reason of such failure he helped cause or bring about the injuries of which he complains, and that he would not have been injured but for such failure, then the law is for the defendant and you should so find."

It is suggested that instruction No. 1 is erroneous in that it contained no qualification to the effect that if the fireman was engaged in putting in coal, he was not necessarily negligent in failing to keep a lookout. This phase of the case we shall discuss in another connection.

Another contention is that there was evidence that plaintiff knew of the approach of the train, and that the

instruction should have been modified so as not to place upon defendant the absolute duty to give warning of the approach of the train, if the jury believed from the evidence that plaintiff knew of its approach. The instruction is in the usual form, and we have never held it error to give an instruction in that form, where there was substantial evidence tending to show that plaintiff did not know of the approach of the train. In order for the jury to find for plaintiff, it was necessary for them to believe from the evidence not only that there was a failure to warn, but that such failure was the proximate cause of the injury. Defendant had the right to argue that the jury could not find for plaintiff under this instruction because there was evidence that plaintiff knew of the approach of the train, and if this was true, defendant's failure to warn was not the proximate cause of the injury. If not content to rest its case on this argument, it should have offered a qualification of the given instruction or another instruction presenting the theory that defendant was under no duty to warn the plaintiff of the approach of the train, if plaintiff knew of its approach. Not having done this, it cannot complain that no such qualification was contained in the given instruction.

Instruction No. 2 is attacked because of the use of the words, "If reasonably sufficient lookout had been observed." It is argued that if plaintiff knew of the coming of the train and went upon the track, his own contributory negligence caused the accident, and no recovery should have been allowed. This position would be sound if the uncontradicted evidence had shown that plaintiff went upon the track so close to the engine that his peril could not have been discovered in time to have prevented the injury by the exercise of ordinary care. However, the evidence on this question was conflicting. If certain witnesses are to be believed, plaintiff went on the track when the train was thirty-five or more feet away, and if this be true, a proper lookout would have enabled the defendant's servants to have warned him of the danger, or to have stopped the train in time to have prevented the accident. Hence, the case falls within the well known rule that where the accident occurs at a place where the defendant is under the duty to maintain a lookout, plaintiff's contributory negligence in going upon the track with knowledge of the approach of

the train will not defeat a recovery if the defendant, by the exercise of ordinary care, could have discovered his peril in time to have prevented the injury. C. & O. Ry. Co. v. Banks' Admr., 144 Ky. 137, 137 S. W. 1066.

Complaint is made of the court's failure to give instruction "D," which is as follows:

"The court instructs the jury that although they may believe from the evidence that the defendants were guilty of negligence in the operation of the train and in the injury of the plaintiff, yet, if they should further believe from the evidence that the plaintiff when at a safe distance from the track knew of the approach of the train and with this knowledge went upon the track or near said train, and was injured, he assumed the risk of the injury, and the law is for the defendants and the jury will so find."

This instruction was properly refused because it relieved defendant of all liability, even though it might have discovered plaintiff's peril in time to have avoided the injury by the exercise of ordinary care.

It is also argued that instruction "F" should have been given. That instruction is as follows:

"The jury are instructed that if the agents and servants of the defendant in charge of the train which injured the plaintiff gave timely and reasonable warning by the ringing of the bell or other reasonable warning of the approach or movement of said train at the time and place where the plaintiff was injured, and if at said time the said plaintiff was racing or running alongside of said train or near the defendant's railroad track in a position where he was not in danger of being struck by said train, and the defendant's agents or servants in charge of said train saw the plaintiff running along by said train, the defendant was not required to anticipate that the plaintiff would put himself in a position of peril, but had the right to assume that he was aware of the danger of coming in contact with said train and would keep out of danger, and, if the jury shall believe from the evidence that the plaintiff while running by the side of or racing with same, collided with the said train or got so close to said train as to be struck or run over by it in passing, and was so struck or run over by said train and injured, the law is for the defendant and the jury will so find."

There was no error in refusing this instruction because there was no substantial evidence on which to base it.

Still another contention is that the court should have given instruction "I," or a corrected instruction embodying the same idea. The offered instruction is as follows:

"The court tells the jury that it is as much the duty of the fireman to coal his engine as it is to keep a lookout where a lookout duty is required. And if they believe from the evidence that at the time and place the plaintiff sustained his injury complained of the fireman was engaged in coaling his engine, then and in that event the defendant could not be held to be guilty of negligence for failing to keep a lookout at said time, if he did so fail."

It may be conceded that at one time the court was inclined to adopt this view of the law, L. & N. R. R. Co. v. Creighton, 106 Ky. 42, 50 S. W. 227; L. & N. R. R. Co. v. Gilmore's Admr., 131 Ky. 132, 109 S. W. 321, but in response to a petition for rehearing filed in the last mentioned case, 114 S. W. 752, the court said:

"If the conditions are such that the engineer cannot do it, as if his engine is on a curve so that his view is obstructed, or if it is otherwise impossible for him to do it, the fireman must keep the lookout. He will not be excused because he may have occasion at that moment to put coal into the fire box of the engine, or to perform any other duty about it less urgent and imperative than that of seeing to the safety of lives either on the train or of those on the track. As between the duty of firing the engine and looking out for the safety of people to whom he is under duty to look out for, whether passengers, laborers, travelers upon highway crossings, or licensees, he must give preference to that duty which conserves human life and safety."

The same view was taken of the question in the more recent case of C. & O. Ry. Co. v. Banks' Admr., *supra.* We may therefore regard it as the settled rule in this state, that in cities, towns and thickly settled communities, where a lookout duty is required, and the physical conditions are such that a lookout by the engineer alone is not effective, then it is the duty of the fireman to keep a lookout unless engaged in the performance of a duty

no less urgent and necessary for the protection of human life, and the putting in of coal is not such a duty. That being true, it was not error to refuse the offered instruction.

But it is earnestly argued that the verdict is excessive, and our attention has been called to certain cases wherein the court intimated that verdicts for less sums were high. In the very nature of things the amount which will compensate a person for personal injury, especially where it is permanent, cannot be measured by strict and definite rules and must be left largely to the sound judgment of the jury. Hence, it is our rule not to disturb its finding unless the amount is so disproportionate to the injury as to strike us at first blush as being the result of prejudice or passion. L. & N. R. R. Co. v. Cox's Admr., 137 Ky. 388, 125 S. W. 1056. In recent years this court has been inclined to approve larger verdicts because of the increase in the cost of living and the decrease in the purchasing power of a dollar. In the case of Standard Oil Co. v. Titus, 187 Ky. 560, 219 S. W. 1077, plaintiff was 35 years of age and his injuries resulted in the amputation of his leg eight inches below the knee. A verdict of $15,200.00 was held not excessive. Other courts have upheld verdicts for even larger amounts for the loss of a foot. Thus in Galveston, H. & S. A. Ry. Co. v. Harris, 172 S. W. 1129, a verdict for $20,000.00 was held not excessive. In the case of Irman v. Brooklyn City Ry. Co., 38 N. Y. S. 990, a verdict for $25,000.00 for the loss of a foot, by a boy three and one-half years old, was sustained, and thereafter affirmed. 60 Hun. 580. Here, plaintiff was only seven years of age. He has been maimed for life. He has suffered and will continue to suffer both mentally and physically throughout his entire life. He is entitled to compensation not only for such suffering, but for the permanent reduction of his power to earn money after he attains his majority. Viewing his injury in the light of present conditions, we are not prepared to say that the verdict is excessive.

Judgment affirmed.