# Chesapeake & Ohio Railway Company, et al. v. Bradford, by, etc.

(Decided February 12, 1924.)

## Appeal from Boyd Circuit Court

1. Railroads—Duty of Fireman to Keep Lookout.—The rule that, where the engineer's view is obstructed, the lookout duty devolves upon the fireman is not confined to cities, towns, and thickly settled communities, the controlling feature not necessarily being the place, but whether or not lookout duty is required and where lookout duty is not effective by the engineer alone, the duty then devolves upon the fireman.

2. Appeal and Error—Refusal of Instruction Held Not Prejudicial.— In action growing out of railroad crossing accident, where court refused to submit to the jury the question whether or not the crossing was an unusually dangerous one, it was not prejudicial error to refuse to instruct that defendants had the right to erect a waiting room shed on the right of way, and that the maintenance of such shed was not negligence.

3. Railroads—Lookout at Crossing Question for Jury.—In an action for injuries at railroad crossing, evidence held sufficient to make the question of failure to keep a lookout one for the jury.

4. Railroads—Evidence Held to Show Want of Lookout.—In action for injuries at crossing, evidence held sufficient to support a verdict that no lookout was kept.

5. Railroads—Finding of Want of Signals Sustained.—In an action for injuries at crossing, a finding that statutory signals were not given held not flagrantly against the evidence.

WORTHINGTON, BROWNING & REED and PRICHARD & MALIN for appellants.

S. S. WILLIS for appellee.

Opinion of the Court by Judge Clay—Affirming.

This is an appeal from a judgment for $5,500.00 for personal injuries resulting from a crossing accident. The facts are these: The Chesapeake & Ohio Railway Company operates a line of railway from Ashland to Louisville. The eastern portion of this division is owned by the Ashland Coal & Iron Railway Company, and is jointly operated by it and the Chesapeake & Ohio Railway Company. About three miles west of Ashland in Boyd county is a station called Summit. The railroad makes a sharp curve as it approaches and leaves Summit. Just west of the station is a public highway over which the railroad runs.

Early in the morning of July 29, 1920, appellee, Fronie Bradford, who was then about ten years old, was riding in an automobile with her uncle and aunt, Mr. and Mrs. A. J. Sexton, and was holding on her lap a little child five or six years of age. As they attempted to cross the railroad tracks, the automobile was struck by a passenger train in charge of Floyd Burns as engineer, and appellee was severely injured.

One of the errors relied on is that instruction No. 1 should not have placed upon the fireman the same lookout duty as was required of the engineer. It is conceded that where the engineer's view is obstructed, the lookout duty devolves upon the fireman, but insisted that this rule is confined to cities, towns and thickly settled communities. In Chesapeake & Ohio Ry. Co. v. Honaker, 190 Ky. 125, 226 S. W. 394, we did say that the rule was applicable ''in cities, towns and thickly settled communities where a lookout duty is required.'' In that case, however, the accident did not happen at a highway or street crossing, and there would have been no lookout duty had it not been for the fact that the company's tracks at the place of the accident were used by such a large number of persons as to require the company to anticipate their presence. Therefore, it seems to us that the controlling feature is not necessarily the place, but whether or not a lookout duty is required. If required, it must be effective, and if not effective by the engineer alone, the duty then devolves upon the fireman. L. & N. R. R. Co. v. Gilmore's Admr., 114 S. W. 752.

Another contention is that the court erred in refusing to instruct the jury that the defendants had the right to erect the waiting room shed on the right of way, and that the maintenance of such shed was not negligence. As the court refused to submit to the jury the question whether or not the crossing was an unusually dangerous one, we fail to see wherein the refusal of the offered instruction was prejudicial error.

The principal contention is that the verdict is flagrantly against the evidence, both on the issue of failure to keep a lookout and failure to give the statutory signals, and that the issue of failure to keep a lookout should not have been submitted to the jury as it was not the proximate cause of the accident. As the engineer testified that his view of the crossing was obstructed, and the fireman stated that he was not looking at the crossing at the time of the accident, and both admitted that they did

not see the machine before it was struck by the engine, it is clear that their evidence alone was sufficient to make the question of failure to keep a lookout one for the jury and to support a verdict that no lookout was kept. Though it be true that the train could not have been stopped before the crossing was reached, we think the circumstances and conditions were such as to justify the conclusion by the jury that the accident could have been avoided if a proper lookout had been kept, and the engineer had then used ordinary care to sound the alarm whistle and check the speed of the train.

On the question of statutory signals appellee, her uncle and aunt and two other witnesses testified that no signals were heard by them. On the other hand, the engineer, fireman and train dispatcher testified that the statutory signals for the crossing were given. W. C. Kirkendall, a passenger, says the whistle was being blown almost continuously after leaving Ashland, and to his best recollection the bell was also ringing. Though positive that the whistle was blown an unusual number of times, he would not say that any signals were given for the Summit crossing. Fred J. Becker, another passenger, testified that from Ashland to Summit the engine whistle was blown almost incessantly and the whistling was so noticeable that he remarked about it to a companion. The bell was ringing when the train stopped. He could not say that the train whistled for the crossing where the accident occurred. The conductor testified that there was an unusual number of signals between Ashland and Summit, but could not say that the train whistled for Summit crossing. Edna Bartram, who lived near Summit, heard one whistle down towards the rock cut, which was about a mile away, but did not remember any whistle for Summit crossing, but heard the bell ringing. Harrison Gilbert heard one whistle near Triplett, but did not hear the bell until after the accident. Patrick Osborn, a miner, who lived near Triplett, heard the bell and two or three whistles. Moses Sexton heard a short whistle six or seven hundred yards east of his house. If every one of the witnesses who testified for the company had stated that the statutory signals were given for the Summit crossing, there might be some merit in the contention that the finding of the jury was flagrantly against the evidence, but no such case is presented. As a matter of fact, only the engineer, fireman, train dispatcher and perhaps two others testified emphatically that the signals for the crossing were given. The conductor and two passen-

gers, though testifying that there was a great deal of whistling, were unable to say that the signals were given for the crossing. Other witnesses living in the vicinity heard the whistle blow when the train was several hundred yards east of the crossing, and the fact that they heard these signals and none thereafter rather supports the view that the statutory signals were not given. On the whole we are unable to say that the verdict was flagrantly against the evidence.

Judgment affirmed.