FRANK S. HENRY, Adm'r. *vs.* BOSTON & MAINE RAILROAD.

Cumberland.     Opinion August 3, 1926.

*Obstructions to view should admonish the traveler to exercise greater vigilance and caution in approaching a railway crossing, and emphasizes the importance of giving signals by bell and whistle, but they do not at country crossings require a railroad company to stop its trains, nor reduce their ordinary and reasonable speed.*

In the instant case in running its train at forty miles an hour at the time and place of the accident, the defendant was doing no more than its duty to its passengers and no less than its duty to the plaintiff's intestate, a traveler upon the highway.

No official mandate being shown requiring the crossing to be guarded, the absence of flagman or automatic signal does not, under the circumstances of this case, prove negligence.

The presiding Justice properly excluded testimony as to the extent and limits of unobstructed vision from a point in the highway opposite the side of the track from which the truck approached it.

On exceptions. An action to recover damages suffered by plaintiff's intestate, Otis Henry, who was riding beside the driver of a truck of the Turner Centre Creamery going toward Portland, that is, westerly on the Pine Point Road in Scarboro and was struck by a west bound train of the defendant company. At the conclusion of the plaintiff's evidence, the court directed a nonsuit and exceptions were taken. Exceptions also were taken to the exclusion of certain testimony. Exceptions overruled.

The case fully appears in the opinion.

*Oakes & Skillin,* for plaintiff.

*Cook, Hutchinson & Pierce,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BASSETT, JJ.

DEASY, J. On Sunday, August 9, 1925, at a crossing near Pine Point in Scarboro, a collision occurred between a motor truck and the defendant's west-bound express train. As a result the plaintiff's intestate, Otis Henry, a passenger on the truck, sustained fatal injuries.

The case comes to this court upon exceptions to an order of non-suit and to the exclusion of certain testimony.

The plaintiff charges that the accident was due to the defendant's negligence in two particulars:

1. That it "ran its train in a reckless, careless and negligent manner."

2. That it "maintained no guards or warnings at said railroad crossing."

In support of the former allegation the plaintiff relies upon testimony that the train was moving at the rate of forty miles an hour, plus testimony offered to show that the day of the accident was foggy and that the crossing, by reason of obstructions to vision, was a peculiarly dangerous one.

It has been frequently and we think generally held that speed of railway trains is not, per se, evidence of negligence. *Moore* v. *M. C. R. R. Co.*, 106 Maine, 304; *Pittsburgh R. Co.* v. *Nichols*, (Ind.), 130 N. E., 546; *Phelps* v. *Erie R. Co.*, 119 N. Y. S., 141—22 R. C. L., 242, and cases cited.

"The railroad is chartered to carry passengers at a high rate of speed. Unless it did so carry them it probably would not carry them at all." *Newhard* v. *Penn. R. Co.*, (Penn.), 26 Atl., 105.

It almost goes without saying that there may be conditions under which a speed of forty miles an hour, or even much less, would be negligent. Counsel for the plaintiff vigorously contends that such conditions are shown in the instant case. In holding otherwise the presiding Justice was, we think, abundantly justified.

*Leighton* v. *Wheeler*, 106 Maine, 452, is cited by plaintiff's counsel. In this case the duty of the engineer to keep a lookout especially at grade crossings is emphasized. But in the pending case there is no direct evidence and no legitimate inference that the engineer neglected this duty.

The plaintiff quotes from and relies upon *Ham* v. *Maine Central R. R. Co.*, 121 Maine, 171, a crossing accident case wherein a verdict for the plaintiff was sustained. But that case differs widely from this. In the case above cited there was evidence justifying the jury in finding that the approaching train gave no warning by bell or whistle, while in the record before us the giving of such warning is not questioned. In the former case the crossing was over a village street, whereas in this the locus is in the country. In the Ham Case it is

said that "It (the railroad company) needlessly . . . allowed trees and bushes, materially obstructing the plaintiff's vision, to grow upon its own premises," while in the instant case there were no needless obstructions upon the railroad property.

In numerous cases, many of which are cited in the plaintiff's brief, it has been held that, under proved conditions, whether the speed of a railroad train is excessive and spells negligence is a jury question. But it will be found that in most of these cases the crossing was over a city or village street (See note 19 L. R. A., 563) or that the speed exceeded a maximum fixed by law or ordinance, or that there was failure to give proper signals, or that the company maintained or suffered unnecessary obstacles to vision in its own right of way, or that there was manifest danger preventable only by stopping or slowing the train. In the pending case the record discloses the existence of neither of these conditions.

The view of on-coming trains by travelers approaching the crossing was partially but far from wholly obstructed and there was a "light fog," so called by one of the plaintiff's witnesses, a fog apparently of no greater density than is common on the Maine coast. These conditions should admonish the traveler upon the highway to exercise greater vigilance and caution in approaching a railway crossing; they make more important the giving of signals by bell or whistle (not questioned in this case) but they do not require a railroad company to stop its trains nor to reduce their usual and reasonable speed.

In running its train at forty miles an hour at the time and place of the accident the defendant company was doing no more than its duty to its passengers and no less than its duty to the plaintiff's intestate, a traveler upon the highway.

In the other charge of negligence, to wit, that the defendant "maintained no guards or warnings at said railroad crossing" the plaintiff also fails.

The ordinary railroad crossing signs were in place. There was no flagman or automatic signal. In the absence of official mandate that the crossing be so guarded the absence of such flagman or signal does not, under the conditions shown to exist in this case, prove negligence.

Among the authorities supporting this opinion we refer to two only.

In a case similar to the one at bar the Pennsylvania Supreme Court says: "If the train has given the proper warning signal to the traveler, of its intention immediately, for a very short space of time,

to occupy the crossing, the further duty of slowing up or stopping until the traveler has safely passed is not by law imposed upon it. That duty is on the traveler." *Newhard* v. *Penn. R. Co.*, (Penn.), 26 Atl., 105.

A very recent case decided by the Supreme Court of Kansas closely resembles that under consideration, the grounds of alleged negligence being mainly the same. Quoting and affirming an earlier case the opinion says: "Cases may arise where the speed of a train may be considered by a jury in connection with the location and other surrounding circumstances upon a question of negligence. In densely populated districts such as towns and cities public safety requires the speed to be moderated. This crossing as we have seen however is in the country where there was no statutory or municipal regulation with respect to the speed of trains. In such cases there is no limit upon the speed at which trains may be run except that of a careful regard for the safety of trains and passengers."

In passing upon the other alleged ground of negligence (absence of flagman or automatic signal) the opinion relies upon and quotes at length from *Grand Trunk Railway Co.* v. *Ives*, 144 U. S., 408, (36 L. Ed., 485). The Kansas case disclosed the running of the defendant's train at the rate of forty-five to sixty miles an hour over a country crossing not guarded by flagman or automatic signal. A demurrer to the evidence was sustained. *Cross* v. *Railroad Co.*, (Kan.), 242 Pac., 469.

There being no evidence of want of due care on the part of the defendant it is unnecessary to consider the defense of contributory negligence.

The plaintiff sought to introduce and the court below excluded testimony as to the extent and limits of unobstructed vision from a point in the highway opposite the side of the track from which the truck approached it. This evidence was plainly irrelevant.

*Exceptions overruled.*