## ALETHA HOYUM v. DULUTH, WINNIPEG & PACIFIC RAILWAY COMPANY AND OTHERS.[1]

May 27, 1938.

No. 31,340.

*Abbott, MacPherran, Dancer, Gilbert & Doan* and *Harry Davis,* for appellant.

*Gillette, Nye, Harries & Montague* and *W. O. Bissonett,* for respondents.

HOLT, JUSTICE.

Action for death by wrongful act where plaintiff had a verdict. On defendants' motion in the alternative, the court granted judgment notwithstanding the verdict. Plaintiff appeals.

The complaint charged defendant with having so negligently operated its train consisting of an engine and four coaches, in going

[1]Reported in 279 N. W. 729.

from Virginia to Duluth, that it collided with an automobile in which plaintiff's decedent was riding, at the grade crossing of the Miller Trunk Highway, about 400 feet north of a flag station about a mile south of Twig, instantly killing both the driver and decedent. The specific negligence alleged was excessive speed, failure to keep a proper lookout for vehicles, and want of proper warnings and signals. There were also allegations of failure to keep the crossing in good repair and passable condition free from snow; but there was no evidence of neglect of duty by defendants in that respect. The proof of negligence was directed to excessive speed and failure to keep a proper lookout for vehicles approaching or on the crossing, in view of the slippery condition of the highway.

The facts as developed by the evidence may be thus stated: Defendant operates a railway between Winnipeg and Duluth. It passes through Fort Frances and Virginia. At the crossing in question it runs practically north and south, and the paved Miller Trunk Highway crosses the track at an angle of about 45 degrees coming southeasterly from Duluth and going to the Iron Range. It is the heaviest traveled highway going north from Duluth. Twig is about 20 miles from Duluth, and Cotton, on this highway, is some 20 miles farther north. Shortly before seven o'clock on the morning of November 21, 1935, plaintiff's decedent, Hoyum, 34 years old, working for one Broman, a plumber, left Duluth in a 1933 Ford coach, owned and driven by Broman, to go to Cotton, where Broman had a job. They took the Miller Trunk Highway. Some days before there had been a sleet storm, rendering the highway slippery, so that it was sanded on the 20th, but high wind had blown much of the sand off the pavement. About 7:30 a. m., as Broman was approaching this crossing, this train of defendant, coming from the north, was also approaching at a speed of 40 miles an hour. Observers estimated the speed of the Ford at from 25 to 35 miles an hour as it passed a store building on the right hand of the highway situated 300 feet southeasterly of the crossing. The Ford was observed to slue and slow down as it neared the railway tracks, finally swinging around so that its rear right-hand corner was struck by

the left side of the engine's cowcatcher. The Ford was tossed against a telephone pole, and the two men were instantly killed. The accident was witnessed by residents on both sides of defendant's right of way. The train was late but had made up some time between Virginia and Twig. The wind was such that the steam and smoke issuing from the smokestack of the locomotive blew down on the fireman's side obstructing his lookout ahead. This the engineer admitted he was cognizant of. Both the fireman and engineer testified that they kept a vigilant lookout, but did not see or know of the Ford being in danger, and did not know of the collision until they arrived at Duluth and observed the damaged cowcatcher. The evidence is conclusive that the statutory signals were given as required. In addition to the sawbuck crossing sign on either side of the railway track, an automatic electric wigwag sign was swinging across the crossing. This had a red electric light and operates as soon as a train comes within 2,000 feet of either direction of the crossing. Although it was full daylight, the headlight of the locomotive was burning. To drivers of vehicles approaching the crossing, as did Broman, the smoke was additional warning of the oncoming train. As to Hoyum, the defense of contributory negligence was not submitted.

The court granted judgment *non obstante* solely on the ground that the evidence failed to establish any actionable negligence on the part of defendant or its servants in charge of the train. We think the fact that the engineer ran this train at 40 miles an hour over this crossing knowing that the fireman's view ahead was obstructed by the steam and smoke issuing from the smokestack is not enough to show negligence. The engineer knew that at the whistling post he had sounded the whistle, two long and two short blasts, and had prolonged them so that the front of the train was less than 100 feet from the crossing when the last blast ceased. He knew that the driver of any vehicle on the highway approaching the crossing from the southeast was informed by the yellow, round warning sign about 600 feet from the crossing of the railway track; he knew that it was daylight and that the train would be in clear

view for more than 500 feet to any driver on the highway approaching the crossing from the fireman's side. Under such a situation, it was not foreseeable by any prudent engineer that any vehicle could come upon the crossing from the fireman's side, so that the speed of the train should have been slackened. Railroad trains at grade crossings have the right of way. Their momentum and ponderosity require that more easily controlled vehicles yield their equal right to the use of the crossing until the train has passed. Hendrickson v. G. N. Ry. Co. 49 Minn. 245, 51 N. W. 1044, 16 L. R. A. 261, 32 A. S. R. 540; St. Paul Southern Elec. Ry. Co. v. Flanagan, 138 Minn. 123, 164 N. W. 584. This was practically a rural highway crossing. The little hamlet Twig, a mile north of the crossing, and this flag station, about 400 feet south thereof, did not make the crossing other than a rural crossing. It was not at all a dangerous crossing, especially for travelers coming northeasterly on this trunk highway, so far as a south-going train was concerned. The fact that shifting wind or changing direction of the railway track may cause the exhaust steam and smoke to obscure the vision of either the fireman or the engineer for a longer or shorter period cannot in reason require a careful engineer to alter the speed of his train on that account. The situation here presented is not that of a dangerous crossing like the one in Hendrickson v. G. N. Ry. Co. *supra,* nor that of a fog or smoke which obscures the view of travelers about to make use of a crossing as in Atlantic Coast Line R. Co. v. McKinley (5 Cir.) 84 F. (2d) 33, or in Munkel v. C. M. St. P. & P. R. Co. 202 Minn. 264, 278 N. W. 41. Under the whole situation shown by this record, it cannot be held that running a train over this crossing at the speed of 40 miles an hour justified the jury in finding the engineer negligent. In Haller v. Pennsylvania R. Co. 306 Pa. 98, 103, 104, 159 A. 10, 12, the court said:

"A speed of 40 miles an hour is not sufficient by itself or when associated with any fact or facts present in this case to support a finding of negligence. Before the question of speed at a crossing can be submitted to a jury, it must be in evidence that the speed

testified to was greater than was usual at that place or that special circumstances existed there at that time and were known or should have been known to defendant or its servants which rendered necessary a lower speed at that point. * * * If railroads must, in order to escape the charge of negligence, moderate the speed of their trains to less than 40 miles an hour at every crossing where vehicles are likely to pass frequently, there would be few if any railroad crossings where this slackening of speed would not be required, and yet such a rule would be inconsistent with the requirements of modern transportation."

In the case at bar it is claimed that the slippery condition of the highway, admittedly known to the train crew, was a fact which the jury could associate with the speed and find negligence. There was no appreciable grade on the highway on either side of the railroad track so that the train crew could anticipate that vehicles might slide onto the crossing notwithstanding the efforts of the drivers to give an oncoming train the right of way. This court, in a case not involving slippery highways, but one where a train crew could observe a car near or advancing toward the crossing, said:

"The train had the right of way, the usual signals to warn travelers of its approach were duly given, and the engineer had the right to assume that any one on or dangerously near the track would get out of the way in time to avoid injury. A train cannot make the time expected and demanded by the public if it slows down whenever a vehicle is seen at or approaching a crossing. It is the duty of the driver of the vehicle to yield the right of way and to take such precautions as, under the circumstances, may be reasonably necessary to avoid a collision. Not until it becomes apparent to the engineer that a collision is imminent is he required to stop his train." Asklund v. C. G. W. R. Co. 176 Minn. 214, 217, 223 N. W. 95, 96.

Many prior decisions to the same point are cited. It is clear from this record that even had the fireman's vision not been obscured and he had discovered that the Ford was in imminent danger, the

train was then so close that all efforts of the engineer would have been unavailing to prevent the tragedy. There is no basis for finding any negligence on the part of any defendant that proximately caused Hoyum's death. The sole cause thereof was the negligence of Broman. Even in case of dense fog, where statutory signals are complied with, trains are not required to reduce speed at open, unobstructed rural highway crossings. Hoffman v. Southern Pac. Co. 101 Cal. App. 218, 281 P. 681; Henry v. B. & M. R. 125 Me. 366, 134 A. 193.

Plaintiff cites and relies on Hines v. Beasley, 17 Ala. App. 636, 88 So. 31, which was a case where a dense fog prevented vision both of train crew and the highway traveler, and is therefore distinguished from the case at bar. The facts in Chesapeake & Ohio Ry. Co. v. Bradford, 202 Ky. 26, 258 S. W. 939, and in Coil's Admx. v. C. St. L. & N. O. R. Co. 232 Ky. 33, 22 S. W. (2d) 428, are so different from those in the instant case that the propositions stated by the court are not of much aid. The prior decisions of this court which plaintiff relies on are Bolinger v. St. P. & D. R. Co. 36 Minn. 418, 31 N. W. 856, 1 A. S. R. 680; Struck v. C. M. & St. P. Ry. Co. 58 Minn. 298, 59 N. W. 1022; Setosky v. D. S. S. & A. Ry. Co. 173 Minn. 7, 216 N. W. 245. The facts involved vary so much from those before us that they furnish no guide here. The most support plaintiff has from the authorities cited is Collins v. Hustis, 79 N. H. 446, 111 A. 286, where it appears that a train crossed a heavily traveled trunk highway at a speed of from 50 to 60 miles an hour, it being conclusively established that an automatic signal of bell and light worked and the statutory warnings were given, a recovery for the death of the driver of the automobile struck on the crossing was disallowed, but that for the death of his guest passenger sustained, the court saying [79 N. H. 449]:

"Whether if it was necessary for the public convenience to run railroad trains over such a crossing at a high rate of speed ordinary prudence did not require more effective warning than the whistle at the signal post one fourth of a mile away and an 'automatic

flagman' is a question of fact to be solved by the jury from their judgment of reasonable conduct in such circumstances."

There are no facts given as to the condition of the crossing, or as to whether or not the train crew could by a proper lookout ahead have discovered the peril of the parties in the automobile so as to avert the collision. In our opinion, the learned trial court was right in ordering judgment *non obstante* in this case.

The order is affirmed.