## Thurman *vs.* Virgin & Wife.     Case 45.

### APPEAL FROM CRITTENDEN CIRCUIT.

1. The right of a witness residing out of the county where he is to give testimony to have a tender or payment of his traveling expenses in going to and returning from the place where he is summoned to give testimony is not taken away by the Revised Statutes, and he still has the right to demand it, and is not guilty of a contempt in disobeying a summons until the law is complied with.
2. A party is not entitled to a continuance of a suit on account of the absence of witnesses residing out of the county, unless he has

THURMAN
*vs.*
VIRGIN & WIFE.

right of the widow, and claims the land as his own. his possession is adverse to the vendor and all persons claiming under him.

either made the requisite payment or tender of the expenses of the witnesses summoned, unless such payment was waived by the witness.

3. In slander, that which amounts to justification cannot be given in evidence under the plea of not guilty. (*Litt. Sel. Ca.* 15"; 1 *B. Monroe,* 170 ) But matter which falls short of justification may be proved in mitigation of damages. (*Hart vs. Reed,* 1 *B. Mon.* 170.)

4. Evidence impeaching the credibility of a witness must be confined to proof of general character for truth, and general moral character—whether worthy of credit on oath; and it is not proper to speak of particular facts. (*Greenleaf on Ev* 599; 3 *Marshall,* 261.) Particular facts cannot be proved by general rumor.

5. When the party on cross-examination inquires into particular facts, the other party may pursue the inquiry; but the party introducing a witness to impeach the character of the witness of his adversary has no right, on the examination in chief, to inquire into particular facts or general reputation as to such facts.

**CASE STATED.** This was an action for slander, brought by Virgin and wife against Thurman for the alleged slander of the wife. The defendant answered, in substance denying the speaking of the slanderous words charged. On the calling of the cause the defendant moved for a continuance of the case. His motion being overruled, a jury was sworn and a trial had, and a verdict for $500 damages; a motion made for a new trial and overruled, and the defendant has appealed; and questions the correctness of the decisions of the court. 1. In overruling his motion for a continuance. 2. In giving and refusing instructions. 3. In refusing a new trial.

*L. Lindsay and C. C. Cole,* for appellant—

The appellant complains of the following as errors of the court below:

First. The court improperly overruled the motion for a continuance.

Second. The court permitted illegal questions to be put to and answered by the witness, Long.

Third. The court permitted illegal and improper testimony to go to the jury.

Fourth. The court excluded competent evidence offered by the defendant below.

Fifth. The court improperly gave instructions asked for by the plaintiffs below.

Sixth. The court illegally refused to give instructions asked for by the defendant below.

Seventh. The court gave erroneous and misleading instructions on its motion.

Eighth. The court improperly overruled the motion for a new trial.

*Hughes & Dallam*, for appellees—

The affidavit for a continuance is entirely founded upon the absence of witnesses who could *only* testify as to the *character* of plaintiff, Elizabeth. Some of them had been summoned—some had not—*all* lived in Union county—none had been tendered their expenses, or fees for attendance and travel; in fact, no offer had been made to any of them, of contributing in any degree to their expenses. By the *Revised Statutes, chap.* 107, *sec.* 13, *page* 702, it is provided that a " witness shall not be compelled to attend in a civil ' suit out of the county of his residence, unless his 'traveling expenses going and 'returning are first ' paid or tendered to him." And further, that his deposition in such case may be taken in a *civil* suit. *Section* 594 *of the Civil Code of Practice* does not change the rule about paying or tendering expenses. It only *intimates* that when they live in an adjoining county they can be compelled to attend; of course the *compulsion* must be according to law, and the law says their expenses must be first tendered or paid. It follows clearly that sufficient diligence had not been used to procure the attendance or testimony of the absent witnesses. If their expenses had been paid or tendered, an attachment could go, unless they lived more than thirty miles from the county seat of Crittenden county, (the town of Marion,) about the distance the record is silent; but they certainly lived in a different county from that of the trial. Against them no compulsory process could go, and if this affidavit and the diligence shown by it and the other tes-

THURMAN
*vs.*
VIRGIN & WIFE.

timony offered on the point be considered sufficient, it follows logically, that a continuance could be had *infinitum*, unless indeed the witnesses chose voluntarily to come. The rule is a wholesome one in itself, but surely must not be departed from in the case of witnesses to prove character only.

2. The second ground upon which a reversal is claimed is, that improper questions were asked, and improper testimony elicited from the witness, Long. Upon a careful examination of his testimony as spread of record, it will be seen, we think, that no improper testimony has been given by him. He testifies altogether about the *general character* of the witness, Jennings, and not about her particular acts, and nothing he says about her can be considered irrelevant in determining what that general character was, and from it, what weight her testimony ought to have.

But aside from this, we think clearly that the defendant cannot complain, for, as we conceive, the testimony of the witness, Jennings, whom Long was called to discredit, was wholly improper and inadmissible, and ought not to have gone to the jury. Her testimony conduced only to show, not that Mrs. Virgin's character was bad, but that upon a certain occasion and time, she had been guilty of *an act of adultery*. Surely there is nothing in *sec.* 151, *Civil Code of Practice*, that justifies the introduction of this sort of evidence. That section gives leave to the defendant to set up *in his answer* the *truth* of his charges, and also *mitigating circumstances*, and gives him thereupon the easement of proving the latter, whether he proves the former or not. This is all. Now, the testimony of Mrs. Jennings is not offered in justification, for firstly, justification in no sense is pleaded or in any manner *in issue*—and secondly, the testimony itself in no wise conduces to support justification. It was offered doubtless in mitigation, but if so, even if admissible for that purpose, it ought to have been pleaded, and the reason is apparent, viz:

in order to apprize the plain·iffs of the charge, and enable them to prepare to disprove it. The section referred to (151) strengthens this view rather than weakens it.

The third ground taken by appellants, is that the court misdirected the jury and refused to give the instructions asked for by defendant. We can only say as to the first proposition, that the instructions given by the court are eminently fair, well considered, and embrace the whole law of the case, as we conceive.

Instruction No. 1, asked by defendant, besides being liable to the objections urged above to the testimony of Mrs. Jennings, (the only testimony upon which it is predicated,) is conceived in very misleading language. What idea can be formed by the ordinary mind, of the meaning of such an expression as "*a just suspicion.*" Is it possible to reconcile the ideas conveyed by the two words' as used? Can a charge be "*just,*" and at the same time be a "suspicion?" Besides, the court had already instructed the jury in instruction No. three given by the court, that if they believed Mrs. Virgin, from any cause founded on the evidence, was not a virtuous woman, they ought to mitigate the damages therefor.

The evidence shows the case to be a very aggravated one, and the damages given are low enough, even though as the proof shows, the plaintiffs are in an humble and obscure walk of life.

*An affirmance,* with damages, (the judgment is suspended by the execution of the appeal bond—see record,) is respectfully asked.

Judge STITES delivered the opinion of the court.

Feb. 1, 1858.

The objections taken to this judgment are,

1. That the court erred in refusing to continue the cause on defendant's motion.

2. That the witness, Long, who was called to impeach the character of Jennings, a witness for defendant, was improperly allowed to prove general

THURMAN
vs.
VIRGIN & WIFE.

rumor with regard to special charges of turpitude and bad conduct alleged against the witness; and

3. That erroneous instructions were given to, and proper instructions withheld from the jury.

1. The Revised Statutes provide that "a witness 'shall not be compelled to attend as such, in a civil 'suit out of the county of his residence, unless his 'traveling expenses, going and returning, are first 'paid or tendered to him; nor except in a criminal 'prosecution, shall he be compelled to attend as a 'witness at a place more than thirty miles from his 'residence, but his deposition may, for that cause, be 'taken in any civil suit. (*Rev. Stat.* 703.)

The *Civil Code, sec.* 594, declares, that "a witness 'shall not be obliged to attend for examination on 'the trial of a civil action, except in the county of 'his residence or an adjoining county; nor to attend 'to give his deposition out of the county where he 'resides, or where he may be when the subpœna is 'served on him." And *section* 614, which provides in what cases depositions may be used in the trial of any issue, enumerates among others, the following: "Where the witness does not reside in the county or 'in an adjoining county, or is absent from the state."

These provisions of the Code do not divest witnesses residing out of the county in which the action may be pending, of the right conferred upon them by the Revised Statutes, *supra*, that is, to have the tender or payment of their traveling expenses going and returning to and from the place to which they are summoned to attend, before they are compellable to attend. This right still exists. And such witnesses are not guilty of contempt in disobeying a summons to attend as such in a civil action out of the county of their residence until after such tender or payment or a waiver on their part of the same, and, until such fact is made to appear, should not be proceeded against by warrant of arrest.

1. The right of a witness residing out of the county where he is to give testimony to have a tender or payment of his traveling expenses in going to and returning from the place where he is summoned to give testimony is not taken away by the Revised Statutes, and he still has the right to demand it, and is not guilty of a contempt in disobeying a summons until the

Neither ought a continuance to be allowed a party applying on the ground of the absence of such wit-

nesses, unless he shows that he has either made the requisite tender or payment, or that the witnesses have waived the same. Until such tender or payment or waiver, it is at the option of the witnesses to attend or not, and a service of summons before or without the tender or payment or waiver, is of no more avail to compel attendance than the simple request of the party. The applicant should show that he has used all the means furnished him by the law, and taken the requisite steps to make such means available for the attendance of his witnesses.

Here, the absent witnesses all lived in another county, and it appeared from the defendant's own showing, that he had not made the requisite tender or payment, and that the witnesses had not waived the same.

The ground for a continuance was therefore insufficient, and the motion properly overruled.

2. It is not certain that the evidence of Mrs. Jennings was strictly admissible under the issues presented by the answer. It simply denies the utterance of the words as charged in the petition, and amounts to nothing more than a plea of not guilty.

It is well settled that matter which would sustain a plea of justification is inadmissible under a plea of not guilty. (*Litt. Sel. Cases*, 150; 1 *B. Monroe*, 170.) Here the testimony of Mrs. Jennings rather tends to prove the truth of the words mentioned in the last paragraph of the petition, and in that view might have been questioned. But it seems to have been admitted, without objection, and was doubtless regarded as " matter short of actual proof of justification or of a complete defense to the action had a justification been pleaded," and, as such, admissible under the authority of *Hart vs. Reed*, 1 *B. Monroe*, 170.

Having therefore been admitted in mitigation, and that to without objection, the witness from whom it was elicited, as well as the party in whose behalf it was introduced, was entitled to the benefit of all

THURMAN
*vs.*
VIRGIN & WIFE.
law is complied with.
2. A party is not entitled to a continuance of a suit on account of the absence of witnesses residing out of the county, unless he has either made the requisite payment or tender of the expenses of the witnesses summoned, unless such payment was waived by the witness.

3. In slander, that which amounts to justification can not be given in evidence under the plea of not guilty. (*Litt. sel. ca.* 150; 1 *B. Mon.* 170 ) But matter which falls short of justification may be proved in mitigation of damages. (*Hart vs. Reed*, 1 *B. Mon* 170 )

THURMAN
*vs.*
VIRGIN & WIFE.

4. Evidence im-
peaching the
credibility of a
witness must be
confin'd to proof
of general char
acter for truth,
and general mo-
ral character—
whether worthy
of credit on
oath; and it is
not proper to
speak of particu
lar facts *Green
leaf on Ev* 5 9;
3 *Marshall*, 261
Particular facts
cannot be prov
ed by general
rumor.

the rules of evidence prescribing the mode in which a witness may be impeached.

One, and perhaps the most familiar of these rules is, that in impeaching the credit of a witness by general evidence affecting his character, the examination must be confined to his general reputation, and not be permitted, as to particular facts. (*Greenleaf on Evidence*, 599; 3 *Mar.* 261.) The reason is obvious. Every witness is supposed to be capable of at once supporting his general character, but is not presumed to be in readiness to meet particular charges or allegations. And unless it is his general reputation alone that is involved in the issue, he has no notice. (*Ibid*, 600.) An evil resulting from an inquiry into particular facts is the raising of collateral issues, and this is relied on as another reason in support of the rule.

Here the witness, Long, who was introduced to impeach the credit of Mrs. Jennings, was asked and permitted to state in chief, notwithstanding the objections of appellant, that "the character of the witness was that of a prostitute; that from general rumor she kept a house of ill fame;" "that she and her husband had the general reputation of being 'hog stealers;" and "that their general reputation was that he would steal and she hide."

This was obviously in violation of the rule referred to. It was not, it is true, permitting an inquiry as to particular facts by direct testimony; but it was allowing such facts to be proved by general rumor and reputation, which was much more objectionable than allowing direct proof to the same effect.

5. Where the
party on cross
examination in
quires into par-
ticular facts.the
other party may
pursue the in
quiry; but the
party introduc
ing a witness to
impeach the

The extent of the inquiry allowable on the examination in chief is as to the general character of the witness, whether good or bad. His or her general character for truth and veracity, and whether worthy of credit on oath. The general moral character of the witness is also a fair subject of inquiry in chief. But not general character as to any particular act or acts of ignominy or turpitude. The

particular facts can be inquired into on the other side, and such inquiry when begun, on cross examination, may be pursued by the party impeaching, but he has no right on the examination in chief to inquire into particular facts or general reputation as to such facts.

Our opinion, therefore, is that the second objection is well founded, and that the error of the court in permitting the mode of inquiry adopted may have been prejudicial to appellant, and must prove fatal to the judgment.

3. The instructions given by the court contain the law of the case, and are unobjectionable either in form or substance; and, in our opinion, no error was committed in refusing those asked for by appellant. Those given embody fully the questions of law arising upon the facts and the others, had they been unobjectionable, were unnecessary.

For the error indicated, the judgment is reversed, and cause remanded for a new trial, and further proceedings not inconsistent with this opinion.