## Cincinnati, New Orleans & Texas Pacific Ry. Co., et al. v. Troxell, et al.

(Decided May 23, 1911.)

### Appeal from Pulaski Circuit Court.

1. Personal Injuries—Damages—Action—Railroads—Peremptory Instruction—In an action by an infant suing by his guardian to recover damages for personal injuries where the evidence shows that it was necessary for the plaintiff to cross the railroad tracks in the railroad yards in order to resume his work, and plaintiff swears that he was crossing the track for that purpose and the

evidence does not show that any particular way had been pro-
vided for crossing the tracks, or that one way to cross was any
less dangerous than another, it cannot be said as a matter of
law that plaintiff in crossing at the place he did, was either guilty
of contributory negligence, or was not engaged in his master's
business, and was therefore a trespasser and entitled only to the
protection due a trespasser.    A peremptory instruction was,
therefore, properly refused.

2.    Instructions—Where the evidence shows that plaintiff came upon
the track only a few feet in front of the engine, and there is no
evidence tending to show that his peril could have been sooner
discovered by proper lookout, or that the injury could have been
avoided by the exercise of ordinary care after his peril was dis-
covered, it was error to submit the case to the jury upon either
of these theories.

3.    Measure of Damages—Infants—In an action for damages for
personal injuries by an infant suing by his guardian, if entitled
to recover at all, can recover only for his mental and physical
pain and suffering, if any, of his power to earn money after ar-
riving at the age of twenty-one years.

JOHN GALVIN and O. H. WADDLE & SON for appellants.

H. C. FAULKNER & SON and B. J. BETHURUM for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Reversing.

Appellee, Rufus Troxell, an infant, suing by his
guardian, brought this action against appellants, Cincin-
nati, New Orleans & Texas Pacific Railway Company and
J. L. McEwen, to recover damages for personal injuries
alleged to have been received through their negligence.
A trial by jury resulted in a verdict and judgment in
favor of appellee in the sum of $9,000, and the railway
company and McEwen appeal.

The facts are as follows: About a week prior to the
accident resulting in the injuries complained of, appel-
lee was employed by appellant's section foreman as a
section hand.    At the time of his employment he pro-
duced the written consent of his mother and stepfather.
Appellee was paid $1.30 per day.    At the time of his em-
ployment he was about sixteen years of age.    After hav-
ing worked about six days in the section crew, that crew,
on Sunday, April 28, 1907, was ordered to the coal chutes
in the yards at Ferguson shops to assist in building a
temporary track for the purpose of re-railing an engine

that had fallen from the coal chute track down the embankment on the east side of the coal chutes. Appellee's duty was to carry water to the section men from a spring located about 200 yards north of the coal chutes, and while not so engaged, to do the work of a section hand. South of Somerset is the incorporated town of Ferguson, and just south of its limits the railway yards and shops are located. The coal chutes are situated upon an embankment high enough above the coal chute tract to permit fuel to be dumped into the tenders of engines, and upon the east side of the coal chutes there is a track on which the coal cars are run up in an elevated position for the purpose of dumping the coal on the platform of the coal chutes. It was from this elevated track that the engine whose derailment made necessary the presence of the section gang had fallen. On the west side of the coal chutes and immediately next to them there is a main track known as the coal chute track. A short distance north of the coal chutes another track leads off from the coal chute track and runs parallel with, and at a distance of about 16 1-2 feet from it, to other points in the yard. From this second track, and at a distance of about 100 feet from the north end of the coal chutes, another track branches off and runs into other portions of the yard. The coal chute track runs immediately along the western front of the coal chutes for a distance of about 600 feet, and then curves off and branches into different tracks leading to the turn table, shops and other points in the yard. At the dinner hour, the section crew, with appellee, left their work on the east side of the coal chutes and crossed over the coal chute track and adjoining track to a shanty located between the coal chute track and the main line of the railroad, for the purpose of getting dinner. While at dinner a large engine, in passing over the frog at the intersection of the second and third tracks from the coal chutes and nearly opposite the third coal chute, became derailed so as to block these two tracks, thus making it necessary to use the coal chute track alone in moving engines in and out of the shop yards. Within a few minutes after the derailment of this engine, appellant, McEwen, in charge of an engine as engineer, with D. D. Dorn, as fireman, left the Somerset yards, north, and went down to the shop yards over the coal chute track for the purpose of taking water. Finding too many engines ahead of him, he came back up the coal chute

track for the purpose of getting water in the Somerset yard, and, just after passing the large engine derailed at the frog of the second and third tracks from the coal chutes, the engine struck appellee, cutting off his leg and otherwise injuring him.

According to appellee's evidence, the accident occurred in the following manner: Just after he had finished eating dinner the foreman directed him to get his water bucket, which had been left on the east side of the coal chutes. For that purpose he started down the embankment on the west side of the coal chutes near where the large engine was derailed at the frog. He claims that he chose this route because the embankment on the west side of the track was lower at that point. He did not go down to the derailed engine as a matter of curiosity, but of necessity. When he passed around the derailed engine and got between it and the coal chute track, he stopped to put a chew of tobacco in his mouth. He then looked up and down the coal chute track and saw no engines running in either direction. He then crossed over to the coal chute track for the purpose of reaching a path which he claims led up the embankment between the second and third coal chute tracks. After walking some eight or nine steps something struck him from behind, and that was the last he remembered until the third day after, when he came to himself in the hospital. He did not hear the whistle blow or the bell of the engine ringing. On cross-examination he admitted that, about three weeks later, Walter Dale signed for him a written statement, in the presence of C. R. Staples, the railroad claim agent, to the effect that he walked around the derailed engine and stepped upon the track right in front of another engine; that the engine that was off the track had a blower going, and was making a lot of noise; that this was the reason he did not hear the engine before it hit him. Appellee stated, however, that he did not know whether the written statement was read over to him or not.

W. H. Roy, a section hand of the same crew, who had preceded appellee across the track, states that, when he got across the track he saw the engine that struck appellee coming up the coal chute track about 200 yards away. He then went on and climbed up the coal chute across some banisters, and about that time it seemed like there was a boy struck by an engine from the west side. He

was about 20 feet from Troxell when the accident occurred. The engine ran about three rail-lengths after striking Troxell, and at the time was running about 25 or 30 miles an hour. He heard no signals of any kind indicating the approach of the engine.

J. W. Johnson, the switch tender, had gone down to the derailed engine and was standing between it and the coal chute track. He did not see the engine strike Troxell, but saw it immediately after, and it must have been running at the rate of 20 or 25 miles an hour. After striking Troxell, he thought the engine ran about 90 feet. He heard no whistle nor ringing of the bell. Just before Troxell was struck, he heard some one say "look out," and the voice sounded as if it came from the coal chute.

Appellants' evidence is as follows: McEwen, the engineer, testified that he saw Troxell standing by the derailed engine as he proceeded south. He never saw him at all upon his return until he heard the fireman say something which he did not understand, and he immediately put on his emergency brake and saw Troxell coming out between the tank and the engine. On account of the boiler he could not discover a person coming on the track on the fireman's side within a distance of 50 feet in front of the engine. As soon as he found out from the action of the fireman that something was wrong, he stopped as quickly as could be done, and actually did stop in 30 or 40 feet.

Dorn, the fireman, testified that he was at his proper place on the engine, ringing the bell and keeping a lookout in front on his side. Troxell came upon the track right in front of the engine, when the engine was only 10 or 12 feet from him. As soon as he saw Troxell making for the track he hallooed to him to look out. After he saw Troxell it was impossible for the engine to be stopped so as to prevent striking him. Some three or four other witnesses, who testified for appellants, were of opinion that the fireman was ringing the bell at the time, and that Troxell was injured by stepping upon the coal chute track when the engine was only a few feet away.

The section foreman testified that he had given Troxell no direction to get his water bucket, and that Troxell was not going across the track in either way that he should have gone, as, in going to their work on the east

side of the coal chute, they should have gone either north or south of the coal chute.

For appellants it is insisted that the court erred in failing to award them a peremptory instruction. They claim that they were entitled to such an instruction, either on the ground that Troxell was guilty of contributory negligence in adopting the most dangerous method of crossing the coal chute track, or that he was, as a matter of fact, a trespasser in attempting to make use of the track at a time and place when his duties did not require him to be there. In considering this question, we must bear in mind that, whether Davis gave Troxell a specific order to go and get his bucket or not, it was his duty as a water boy to get water for the section crew. We must also take into consideration the fact that it was absolutely necessary for Troxell to cross the track in question for the purpose of getting the bucket. It by no means satisfactorily appears from the evidence that any particular way had been provided by the railway company for crossing the tracks at that point, or that the crossing at any particular place was so much less dangerous than at other places, that we can say, as a matter of law, that in crossing the track upon which he was injured, at the time and place shown by the evidence, he was guilty of contributory negligence or was not engaged in his master's business, and was, therefore, entitled to no more rights than a mere trespasser. If he was engaged in the master's business, then he was not a trespasser, but was entitled to the protection of any other employe similarly situated. What protection, then, he was entitled to, depends upon the facts, and was a question for the jury. Nor does appellee's right to recover depend upon whether or not the tracks at that point were used by the public in such numbers as to make reasonably apparent to a person of ordinary prudence that the presence of persons on the track at that point might be reasonably anticipated. The accident occurred in the railroad yards; appellee was an employe; therefore, if he was engaged in his master's business and it was reasonably necessary for him to cross the tracks at a time and place, where the presence of employes on the track should have been reasonably anticipated, then the company owed him the duty of looking out for him and giving him timely warning of the approach of the engine by blowing the whistle or ringing the bell. Our conclusion,

then, is that appellants were not entitled to a peremptory instruction.

The instructions given by the trial court, however, did not fairly present the law of the case. Under them, appellee was entitled to recover, not only for a failure to blow the whistle, ring the bell or give other signals of the approach of the engine, but also for a failure on the part of appellants to use ordinary care to stop the engine after they saw appellee's peril, or might have seen his peril by the use of ordinary care. The only evidence in the case as to the length of time appellee was on the track before being struck by the engine is his own statement, that he walked eight or nine steps. It matters not, then, how straight the track was, or for how great a distance a man could be seen on the track, his presence could not have been discovered until he was actually on the track. Being on the track for the time required to go only eight or nine steps, the engine causing the injury could not have been but a few feet away when he stepped upon the track. As he came upon the track on the fireman's side, it was necessary for the latter to communicate his presence to the engineer, and then for the engineer to take such steps as were necessary to stop the engine. We, therefore, conclude that the court erred in authorizing a recovery, either in the event appellants failed to use ordinary care to discover appellee's presence on the track, or to use ordinary care to avoid injuring him after his peril was discovered. Appellee was not injured because of a failure on the part of appellants to keep a lookout. His whole case depends upon whether or not appellants owed him the duty of giving timely warning of the approach of the engine, and whether or not they failed in the performance of this duty.

The instruction on the measure of damages is also erroneous. Appellee was only sixteen years of age at the time of his injury. Up to the time he arrived at the age of twenty-one years, his services belonged to his father and mother. The fact that they consented for him to work for the company did not constitute a manumission. Were he permitted, through his guardian, to recover in this action for loss of time, his parents might also recover. Unless the parents who are entitled to his services, unite in the action and thus waive their right to recover for loss of time, the infant can recover only for his mental and physical pain and suffering, if any, and

for the permanent impairment, if any, of his power to earn money after arriving at the age of twenty-one years. Chesapeake & Ohio Ry. Co. v. Davis, By, et al., 22 Ky. Law Rep., 1156; Slaughter v. M. C. & St. L. Ry. Co., 28 Ky. Law Rep., 665.)

On the next trial, if the evidence be the same, the court will tell the jury that, if they believe from the evidence that plaintiff, at the time he was injured, was engaged in the performance of his duties, and that he crossed the track at a time and place where the presence of employes should have been reasonably anticipated, it was the duty of defendants to give timely warning of the approach of the engine by ringing the bell or blowing the whistle; and if they believe that defendants failed to give such timely warning of the approach of the engine, and that plaintiff, by reason of such failure and while exercising ordinary care for his own safety, was injured, they should find for the plaintiff. On the other hand, if they believe that plaintiff at the time he was injured, was not engaged in the performance of his duties, or was not injured at a time and place where the presence of employes on the track should have been reasonably anticipated, or that the defendants did give timely warning of the approach of the engine by ringing the bell or blowing the whistle, then, in either of these events they will find for the defendants.

These instructions, together with one upon contributory negligence, and one upon the measure of damages, as hereinbefore indicated, will be all that will be given.

In concluding this opinion, we deem it proper to call attention to the fact that plaintiff's counsel exceeded the limits of propriety when he stated in his argument that employes of a railroad company, as long as they remained in the service, are required to testify to whatever is deemed necessary to its interest, and that for fear of losing their employment they perjure themselves to protect the company; and that no honest jury would consider their testimony or return a verdict on their evidence. While it is proper, within reasonable limits, to refer to the interest of a witness, growing out of the relation which he sustains to his employer, it is not within the bounds of legitimate argument to denounce as perjurers all employes of a railroad who testify for the company. Judgment reversed and cause remanded for a new trial consistent with this opinion.