## Louisville & Nashville Railroad Company v. Bryant, By, Etc.

(Decided June 22, 1923.)

### Appeal from Lee Circuit Court.

1. Railroads—Verdict for Shooting by Watchmen Held Not Against Evidence.—In an action for personal injuries, received when plaintiff was shot by two night watchmen employed by defendant railroad, a verdict for plaintiff held not flagrantly against the evidence, notwithstanding the claim of the watchmen that plaintiff resisted when they attempted to arrest him for intoxication.

2. Railroads—Watchmen Going on Highway Within Scope of Employment.—Watchmen employed by a railroad company to guard its station and premises were acting within the scope of their employment when they followed plaintiff from the station platform, where they had attempted to arrest him, on to a public highway, where they shot him, causing the injuries for which he sued, since the entire affair was one continuous transaction.

3. Railroads—Evidence Held to Exclude Presumption Watchmen were Acting as Public Officers in Shooting.—Where a deputy constable and another were employed by a railroad company as night watchmen, and it was their duty to guard the railroad's property, look after suspicious characters, and see that no disorder occurred, and they testified they were engaged in the performance of those duties at the time the difficulty with plaintiff occurred in the course of which he was shot, it cannot be presumed that the constable was acting as a public officer and had deputized the other to assist him, but the evidence tended strongly to show that they were acting solely in the furtherance of appellant's business, and therefore in the scope of their employment.

4. Evidence—Testimony of Doctor Plaintiff was Intoxicated Within an Hour After Shooting Held Competent.—In an action against a

railroad company for injuries resulting from the shooting of plain-
tiff by defendant's night watchmen where plaintiff denied he was
intoxicated as claimed by the watchmen, evidence by a physician
who saw plaintiff an hour after he was shot that plaintiff was
then intoxicated was near enough to the time of the shooting to
be competent, though it was not error to exclude evidence of an-
other physician who did not see plaintiff for more than two hours
thereafter to the same effect.

5.   Trial—Requested Instruction to Separate Punitive and Actual
Damages Should be Given.—It is the duty of the trial court, when
requested to do so, to give an instruction directing the jury to
separate its findings of compensatory and punitive damages.

6.   Appeal and Error—Refusal to Require Separation of Punitive and
Actual Damages Held Prejudicial to Defendant.—In an action for
the shooting of plaintiff by railroad watchmen, where the evidence
as to the permanency of plaintiff's injuries was unsatisfactory, the
failure of the trial court to require a separation of punitive and
compensatory damages was prejudicial error, in view of the char-
acter of the evidence and of the rule that punitive damages must
bear some relation to the injury and to the cause thereof.

7.   Infants—Evidence of Emancipation Held not to Justify Allowance
to Infant of Damages for Impaired Earning Capacity Before Ma-
jority.—In an action for injuries to a minor, whose father was not
a party to the proceeding, where no issue as to emancipation of
the plaintiff was made by the pleadings, statements by plaintiff
tending to show his emancipation did not authorize the allow-
ance of damages for his impaired earning capacity prior to attain-
ing his majority, since a judgment for plaintiff for such damages
in that action would not be binding against his father in an action
for such impaired earning capacity.

B. D. WARFIELD, ASHBY M. WARREN, ROBERT R. FRIEND,
ROSE & STAMPER and HUNT, NORTHCUTT & BUSH for appellant.

RIDDELL & SHUMATE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This is an appeal from a judgment in favor of ap-
pellee for personal injuries resulting from a gunshot
wound which, it is claimed, was inflicted by the employes
of appellant while acting within the scope of their em-
ployment.

The material facts are these: Albert Rawlins, who
was also a deputy constable, and Joe Spivey were night
watchmen in the employ of appellant in its yards at
Ravenna. It was their duty to protect the property of ap-
pellant, attend the arrival and departure of trains, look

after suspicious persons and see that no disorder occurred at the station. The difficulty occurred in Ravenna about 1:30 a. m. July 4th, 1920. Appellee, a young man about eighteen years of age, had come to the station for no other purpose than to see what was going on. After walking about the station and speaking to one or two friends, he started around the station. According to his evidence he had had only two drinks, and was not intoxicated, and carried a pistol on his person. In passing around the station he was accosted by Spivey, who told him to wait a minute. Appellee did not wait, but started to run. Rawlins said, 'G— d— him, pour it into him.'' Rawlins and Spivey then began shooting at him. After he got up to the road, one of the shots struck him in the back, and he then fired three shots at his pursuers. Rawlins and Spivey say that appellee was drunk, covered with mud and was acting in a suspicious manner, and Rawlins deputized Spivey to assist in arresting him. When they accosted appellee he drew his pistol and started towards them, then turned and ran. They then fired several shots' into the ground for the purpose of frightening appellee and causing him to stop. When they reached the road appellee fired three shots at them; one of which came near striking Rawlins. After that one of them fired the shot which struck appellee.

On the question whether appellee was drunk or drew his pistol at the station, or fired before or after he was shot, some of the witnesses corroborated appellee, while others corroborated Rawlins and Spivey, and in view of the sharp conflict in the evidence, it cannot be said that the finding of the jury was flagrantly against the evidence.

One of the principal contentions of appellant is that at the time appellee was shot and wounded the watchmen were not acting within the scope of their employment. The basis of this contention is that appellee was shot on a public highway, and therefore at a place where the watchmen were without authority to act for appellant. There might be some merit in this contention if the difficulty had started and ended on the highway, but such is not the case. When the trouble began all the parties were at the depot. When the watchmen commenced firing they and appellee were on appellant's property and remained thereon for some time during the pursuit and while the firing was going on. When they reached the public road the shot which struck appellee was fired.

Therefore, if appellee's version of the affair be true, it necessarily follows that the watchmen were guilty of one continuous wrong, and appellant's liability is the same as if the injury had been inflicted while all the parties were on its premises. Wise v. Covington & Cincinnati St. Ry. Co., 91 Ky. 537.

It is also suggested that as Rawlins was a public officer and had the right to deputize Spivey to assist him in making arrests, the presumption is that he and his deputy in attempting to make the arrest did so in the capacity of peace officers, acting under authority from the Commonwealth, and not as employes of appellant. Such a presumption cannot be indulged in this case, because it does not square with the facts. Rawlins does not claim that he was at the depot in the mere capacity of a peace officer. Both he and Spivey were in appellant's employ as night watchmen. They both admit that, under the terms of their employment, it was their duty to guard appellant's property, attend the arrival and departure of trains, look after suspicious characters, and see that no disorder occurred, and that they were engaged in the performance of these duties at the time the difficulty occurred. In other words, the case is one where the evidence tended strongly to show that the watchmen were acting solely in the furtherance of appellant's business, and therefore within the scope of their employment. L. & N. R. R. Co. and Curt Jones v. Owens, 164 Ky. 557, 175 S. W. 1039; McKain v. B. & O. R. Co. (W. Va.), 64 S. E. 18, 23 L. R. A. (N. S.) 289, and note.

Complaint is made of the exclusion of the evidence of Drs. Snowden and Wallace that they saw appellee some time after the difficulty, and he was then intoxicated. It was about 2:30 a. m. when Dr. Snowden saw appellee and some time between two and four o'clock when Dr. Wallace saw him. On the appeal in the criminal prosecution against Rawlins and Spivey we held it was a vital issue whether the appellee was intoxicated at the time the watchmen attempted to arrest him, that the hour when Dr. Snowden saw appellee was sufficiently near in point of time to make his evidence admissible on that issue, and that its exclusion was prejudicial error. At the same time we held that the exclusion of Dr. Wallace's testimony was not prejudicial, as the hour to which his testimony related was perhaps as late as four o'clock in the morning, and was so far removed from

the time of the shooting as to possess but little, if any, probative value. Rawlins and Spivey v. Commonwealth, 191 Ky. 401, 230 S. W. 529. If appellee's intoxication at the time of the difficulty was a vital issue in the criminal prosecution against Rawlins and Spivey, then it was equally vital in this action for damages against their employer, and for the same reason we must hold that the court did not err in excluding Dr. Wallace's evidence, but did err in excluding the evidence of Dr. Snowden.

Another ground urged for reversal was the refusal of the court to give an offered instruction directing the jury to separate its findings of compensatory and punitive damages. In L. & N. R. R. Co. v. Scott, 141 Ky. 538, 133 S. W. 800, we held that it was advisable and proper for trial courts to give such an instruction. In the more recent case of C. & O. Ry. Co. v. John's Admx., 155 Ky. 264, 159 S. W. 822, we held that a defendant had the right to have the damages separated, but that a failure to ask such separation was a waiver of the right. Therefore, it cannot be doubted that it is the duty of a trial court, when requested, to give an instruction directing the jury to separate its finding of compensatory and punitive damages, and while its refusal in some instances may not be ground for reversal, yet in view of the unsatisfactory character of the evidence as to the permanency of appellee's injuries, and of the rule that punitive damages must bear some relation to the injury and the cause thereof (L. & N. R. R. Co. v. Ritchel, 148 Ky. 701, 147 S. W. 411), we are persuaded that the failure of the trial court to give the requested instruction was prejudicial error.

Another contention is that as appellee is an infant and his father was living at the time of the trial, the court erred in authorizing the jury to award appellee damages for the permanent impairment of his power to earn money, without limiting the damages to the time after he became of age. In C., N. O. & T. P. Ry. Co. v. Troxell, 143 Ky. 765, 137 S. W. 543, we said:

"Appellee was only sixteen years of age at the time of his injury. Up to the time he arrived at the age of twenty-one years his services belonged to his father and mother. The fact that they consented for him to work for the company did not constitute a manumission. Were he permitted, through his guardian, to recover in this action for loss of time his parents might also recover.

Unless the parents, who are entitled to his services, unite in the action and thus waive their right to recover for loss of time, the infant can recover only for his mental and physical pain and suffering, if any, and for the permanent impairment, if any, of his power to earn money after arriving at the age of twenty-one years. C. & O. Ry. Co. v. Davis, by, et al., 22 Ky. L. Rep. 1156; Slaughter, v. M. C. & St. L. L. Ry. Co., 28 Ky. L. Rep. 665.''

But it is insisted that the father had no cause of action at the time of the injury because he had theretofore emancipated appellee, and attention is called to certain statements of appellee which tend to show emancipation. It must not be overlooked that no issue of emancipation was made by the pleadings, and that the father was not a party to the proceeding. If we should now hold that appellee was emancipated it would not bind his father in any way, and in case of a suit by the father appellant would be under the necessity of relitigating the same question with him, with the possibility that he might show that, as a matter of fact, there had been no emancipation. We therefore conclude that the facts relied on were not sufficient to authorize the jury to award appellee any damages for the impairment of his power to earn money before he reached the age of twenty-one years.

On another trial the court, in addition to giving an instruction on the measure of damages and an instruction authorizing the finding of punitive damages, will instruct the jury as follows:

1. If you believe from the evidence that, on the occasion in question, Albert Rawlins and Joe Spivey, or either of them, while acting in the course of and within the scope of their employment as night watchmen of the defendant, shot and wounded Nesbert Bryant, you will find for the plaintiff, unless you believe as in instructions 2 or 3.

2. If you believe from the evidence that, on the occasion in question, Nesbert Bryant was drunk, or drew from his pocket a pistol which was theretofore concealed on his person, in the presence of Albert Rawlins and Joe Spivey, and that Rawlins deputized Spivey to assist him in arresting said Bryant, and that while they were attempting in good faith to arrest said Bryant and were pursuing him for that purpose, and before they fired at said Bryant, Bryant fired at them, and that they believed, and had

reasonable grounds to believe, that they, or either of them, were in danger of death or great bodily harm at the hands of said Bryant, and that it was necessary, or was believed by them, or either of them, in the exercise of a reasonable judgment to be necessary, to shoot and wound the said Bryant in order to avert the danger, real, or to them, or either of them, apparent, then you will find for the defendant.

3.   If you believe from the evidence that on the occasion in question Nesbert Bryant was drunk, or drew from his pocket a pistol which was theretofore concealed on his person, in the presence of Albert Rawlins and Joe Spivey, and that Rawlins deputized Spivey to assist him in arresting said Bryant, and that while they were attempting in good faith to arrest said Bryant and were pursuing him for that purpose, said Bryant fired at them or either of them when he did not believe and have reasonable grounds to believe that he was then and there in danger of death or great bodily harm at the hands of either of them, and that said Rawlins and Spivey, or either of them, then shot and wounded said Bryant and in doing so, if they or either of them did so shoot and wound him, they or either of them used no more force than reasonably appeared to them or either of them to be necessary to effect his arrest, you will find for the defendant.

4.   If you believe that on the occasion in question said Rawlins and Spivey were not acting in the course of and within the scope of their employment as night watchmen of the defendant, you will find for the defendant.

Judgment reversed and cause remanded for new trial not inconsistent with this opinion.

Whole court sitting.