## City of Pineville v. Lawson.

(Decided June 8, 1928.)

(As Modified on Denial of Rehearing, October 19, 1928.)

### Appeal from Bell Circuit Court.

1. Continuance.—Where no steps were taken to procure evidence of witness by deposition under Civil Code of Practice, sec. 554, or to secure his personal attendance under section 556, refusal of continuance and refusal of court to allow reading of affidavit setting out his testimony held not error; section 315 not being applicable to witnesses whose appearance cannot be coerced.

2. Stipulations.—Where, in action against city for injuries resulting from defective condition of bridge, it was stipulated that the city had not done any work on the bridge, due to its belief that county was required to make repairs, stipulation had effect of withdrawing evidence previously introduced showing that city council had in fact done work on the bridge.

3. Municipal Corporations.—City is liable for unsafe condition of its streets of which city has knowledge or might have knowledge by

reasonable watchfulness, even though streets were laid or unsafe conditions brought about by another; city not being excused by fact that person creating the danger was also liable.

4.  Municipal Corporations.—Duty of municipal corporation to keep its streets in reasonable repair and reponsibility for failure to do so applied to the use of the streets by children as well as adults.

5.  Bridges.—City of fourth class, having exclusive control of bridge constructed by county within its boundaries under Ky. Stats., secs. 3560-3562, held liable for injuries received as result of known defective condition of bridge due to city's failure to make repairs under section 4294, though bridge was part of state highway project, where it was used as part of city's streets.

6.  Trial.—In action for injuries to plaintiff's legs, resulting in blood poisoning, refusal of instruction which limited recovery to wound actually received and excluded recovery for injuries through disease germs was not error, where substantially covered by instructions given.

7.  Damages.—As between an innocent and a wrongful cause for injuries complained of, the law uniformly regards the latter as the proximate and legally responsible cause.

8.  Infants.—Eleven year old boy, suffering permanent injury, was entitled to recover damages for loss of earning capacity before as well as after becoming of age, where suit was brought by his father as next friend, and father as guardian petitioned to become party plaintiff, since father vested his right of action for services in his son.

9.  Damages.—$25,000 verdict to eleven year old boy for scraping of shin on falling into hole in bridge, which injury resulted in blood poisoning, four years' confinement in bed, and destruction of knee joints, rendering him a helpless cripple, held not excessive.

DAVIS & HARRISON for appellant.

J. S. GOLDEN and B. B. GOLDEN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Carlo Lawson, whom we shall call the plaintiff, suing by his next friend, recovered a judgment against the city of Pineville, which we shall refer to as the city, for $25,-000, to reverse which the city has prosecuted this appeal. Some time about the year 1909, certain promoters subdivided a tract of land within the city of Pineville, which has since been known by the name of Newtown or East Pineville. The only means of reaching this subdivision from the main part of the city of Pineville was by a bridge over the Cumberland river and a bridge over Straight creek. We do not mean that either of these

bridges could be used, but it was necessary to use them both. Carlo Lawson lived to the right of Straight creek as one goes down the stream, and this subdivision, known as Newtown, was to the left of that creek. At the time this subdivision was made, the promoters of it, in order to make their subdivision salable, built a wooden bridge across Straight creek. That bridge was used until about 1918, when it was washed away and destroyed by a flood that came down the creek. After its destruction, Bell county erected a steel bridge at that place, but shortly thereafter a dispute arose between Bell county and the city relative to the upkeep of this bridge, the net result of which was that no one kept it up, and the plaintiff appears to be the innocent victim of this neglect. The bridge got into bad repair; that is, the flooring wore out, and numerous holes in it resulted, and the city authorities knew of them. One of these holes was large enough that a calf fell through it.

One night in October, 1922, the plaintiff, who was then about eleven years old, was crossing this bridge, returning to his home from a tent meeting that was in progress in Newtown. He fell in one of these holes, so he says, and scraped his right shin. A blood stream infection known as blood poisoning followed, and it is claimed that it resulted from this fall. This boy has since been a great sufferer, and for over four years he was confined to his bed. Both legs became involved. Dr. Owen, of Louisville, under whose care the boy was from April to November, 1926, in describing his condition when he first saw him, said:

"He had discharging sinuses from both knees, thighs, and shin bones. X-ray pictures, several of them having been taken, show definite evidence of chronic osteomyelitis involving both thigh bones; the knee joints having been destroyed by disease. Both tibia or shin bones were also intensely involved. Both knees were absolutely fused or stiff, the joint surface having been destroyed entirely, the bones thoroughly grown together, both feet were extended, his heels drawn up, ankles were straightened by an operation. His sinuses and an infection was treated locally and constitutionally. At the time of his discharge, he was wearing braces on both legs, he was able to stand with the assistance of braces and crutches and could walk poorly. His general constitutional condition was greatly improved, he gained considerable

weight, his local infections were greatly improved, but not cured, when discharged.''

When asked about the possibility of further improvement in this boy's condition, Dr. Owen said:

''The maximum to which it would be possible for him to recover would be to be able to walk with two stiff knees, because his knee joints have both been absolutely destroyed by disease. . . . I say that would be the maximum; it might come to pass. However, I am not expecting that. It is questionable whether he will recover at all, because he still has a lot of infection in both of his legs.''

We shall state the grounds relied on for reversal as we reach them in our discussion of them. The continuance which was refused and is relied on as the first ground for reversal was asked because of the absence of Dr. C. C. Durham, the physician who attended this boy in the first weeks of his illness, but no steps had been taken to procure the evidence of the doctor by deposition, as is provided by section 554 of the Code, nor had any steps been taken to secure his personal attendance, as is provided by section 556; hence the court did not err in refusing a continuance or in refusing to allow the city to read to the jury from the affidavit filed on its behalf that part setting out what the doctor's evidence would be. See Holzhauer v. Sheeny, 127 Ky. 28, 104 S. W. 1034, 31 Ky. Law Rep. 1241; Thurmond v. Virgin, 57 Ky. (18 B. Mon.) 785. Section 315 of the Civil Code does not apply to witnesses whose appearance cannot be coerced.

The second ground for reversal presents the question of the city's duty to keep up repairs on this bridge. Pineville is a city of the fourth class, and, by our statutes, sections 3560, 3561, and 3562, had exclusive control of this bridge. There was some evidence introduced showing the city had made some repairs on the floor of this bridge, but, after that was done, this stipulation was made:

''It is agreed by the parties that the city council did not do any work on the bridge or make any repairs because it believed and claimed that it was not its duty, but the duty of Bell county, to keep the bridge in repair.''

We must determine what was the effect of this stipulation, for, as we have stated, there had been some evi-

dence offered that the city had made repairs on this bridge. Of course, the city would attempt to disprove that, but, when these parties made this stipulation, they agreed the city council did not do any work on the bridge. They did not say that the bridge was not in the city, or the city and its citizens did not use the bridge, and that for that reason it refused to do work on the bridge, but stipulated that it did no work on the bridge because it did not consider such to be its duty. The effect of that was to withdraw the evidence that had been introduced showing the city council had done work on this bridge, and thus we have this bridge existing across this creek, within the city, erected by the county, used by the city and its citizens, and maintained by no one. Its streets came to each end of it; indeed, they led across it, it was a part of its streets; and a city is liable for known dangers existing in its public streets and for defects in sidewalks laid therein, even though it may not have laid them or required them to be laid.

In the City of Madisonville v. Pemberton's Admr's, 75 S. W. 229, 25 Ky. Law Rep. 347, we held the city liable for a defect in a sidewalk that had been built by the property owner without any requirement of the city that he do so. In Louisville v. Brewer's Adm'r, 72 S. W. 9, 24 Ky. Law. Rep. 1671, Rawling Street had been a country road before being taken into the city. A cinder path had been made along the edge of the road, and a number of posts had been erected along it to protect the path from trespassing wagons and other vehicles. It seems about all the city had done after taking in the neighborhood was to assess the property for municipal taxation; yet the city was held liable for an injury sustained on account of one of these posts. In City of Ashland v. Cummings, 194 Ky. 645, 240 S. W. 63, we affirmed a judgment that held the city liable for injuries resulting from the defective condition of a sidewalk built before the property was taken into the city.

In Town of Bromley v. Bodkin, 77 S. W. 696, 25 Ky. Law Rep. 1245, the town was held liable for injury resulting from a defective sidewalk which had been built by the property owner sua sponte, and the only proof of work done upon the street was that the city had filled some holes in it, and had plowed some gutters along each edge of it. The city is not relieved of responsibility by having an ordinance requiring the abutting owner to keep sidewalks in repair, and in the case of Webster v.

C. & O. R. Co., 105 S. W. 945, 32 Ky. Law Rep. 404, we held that the obligation of the municipality to keep its streets in reasonably safe condition for public travel is unconditional, and this duty it cannot shift to an abutting owner. To hold otherwise would cause it to relax its care, and a divided responsibility would result in detriment to the public service. We cited and approved that doctrine in the case of Louisville v. Bott's Adm'x, 151 Ky. 578, 152 S. W. 529, and held the city was responsible for failure to keep the street in repair, although it had a contract requiring the Monon R. Co. to make such repairs. The liability of a city for unsafe conditions of its streets extends to cases where this unsafety is brought about by persons other than the agents of the city and the city has knowledge of such unsafe condition, or might have knowledge thereof by reasonable watchfulness. See City of Louisville v. Keher, 117 Ky. 841, 79 S. W. 270, 25 Ky. Law Rep. 2003; Eagan v. Covington, 166 Ky. 825, 179 S. W. 1026; City of Mayfield v. Hughley, 135 Ky. 532, 122 S. W. 838; City of Bowling Green v. Bowling Green Gas Light Co. (Ky.) 112 S. W. 917; City of Newport v. Miller, 93 Ky. 22, 18 S. W. 835, 13 Ky. Law Rep. 889; City of Louisville v. Frank, 154 Ky. 254, 157 S. W. 24. *The negligence for which the municipality is chargeable is not for the creation of the defect, but for permitting the defect to remain unguarded after it knew, or by proper watchfulness should have known, of the defect. The city is not excused by the fact that the one creating the danger is liable. The city's responsibility is not rested on its creation of the danger, but on its allowing the danger to continue after it knew, or by reasonable watchfulness should have known, thereof.* Thus Louisville was held responsible for the existence of a hole at the intersection of Preston and Market streets, although the proof showed the railway company dug the hole. See City of Louisville v. Arrowsmith, 145 Ky. 498, 140 S. W. 1022. The city is also responsible for a known danger that it allows to remain, although that danger was created by the negligence of one who was acting under its permission, lawfully granted. Brentlinger v. Louis. Ry. Co., 156 Ky. 685, 161 S. W. 1107; City of Carlisle v. Campbell, 151 Ky. 279, 151 S. W. 673; Grider v. Jefferson Realty Co. (Ky.) 116 S. W. 691. This duty to keep its streets in reasonable repair and responsibility for failure so to do applies to the use of streets by children as well as adults. Gnau v. Ackerman, 166 Ky. 258,

179 S. W. 217; City of Covington v. Bollwinkle (Ky.) 121 S. W. 664.

In the case of City of Flemingsburg v. Fleming County, 127 Ky. 120, 105 S. W. 133, 32 Ky. Law Rep. 11, a bridge situated within the city of Flemingsburg had gotten out of repair. The record does not disclose who built the bridge, whether the city, the county, or a turnpike company. A creek runs through this city, and one of the principal highways of the county also goes through the city, and this bridge was constructed to enable parties using the highway to cross the creek. This highway also served as one of the principal streets of the city. The county refused to contribute to the repair of the bridge. The city made the repairs, and sought to recover against the county. A demurrer was sustained to the city's petition. This court reversed the judgment, and held that the costs should be determined on the basis of the population and wealth of the county and the population and wealth of the city, thus holding the city responsible, it would seem, for a bridge within its limits.

In the case of City of Harlan v. Parsons, 202 Ky. 359, 259 S. W. 717, a bridge had been constructed by a promoter to enable him to sell lots in a subdivision which he connected by means of this bridge over Clover Fork of Cumberland river to the main city of Harlan. The city used this bridge for a number of years, and in May, 1915, it was deeded to the city. Parsons sustained injuries while using the bridge, for which he recovered $2,000. Among other defenses interposed by the city was this, that it had not formally accepted the bridge. We reversed the judgment, but not on that account.

In the case of Atkinson v. Town of Decatur, 131 Miss. 707, 95 So. 689, Atkinson sought to recover for injuries received as a result of defective bridge. The town for defense pleaded that this bridge had been taken over by Newton county, and that it and the street of which it is a part had become a part of road district No. 1 of Newton county, and that therefore the city was not liable. The trial court sustained that plea, but the Supreme Court of Mississippi reversed it, and held the city was liable for defective condition of the bridge, although the county had taken it over.

In the case of City of Youngstown v. Sturgess, 102 Ohio St. 480, 132 N. E. 17, a bridge within the limits of

the city of Youngstown was constructed by the commissioners of Mahoning county across the Mahoning river. The plaintiff sued both the city and the county. The trial court dismissed the proceeding as to the county. The plaintiff recovered $1,000 against the city. The judgment was affirmed.

In the case of Barr v. Cowlitz County, 127 Wash. 14, 220 p. 6, Mrs. Kate M. Barr, as the administrator of her husband, Ben N. Barr, brought an action against the city of Kelso and Cowlitz county. This bridge had been constructed by the county and the city jointly, the county paying $22,500 and the city $2,500 of the cost. The bridge was within the city. The county demurred to the plaintiff's petition. The trial court sustained the demurrer. The Supreme Court of Washington reversed that action. It seems to have been conceded throughout that case that the city was liable.

In the case of Vizarro v. King County, et al., 130 Wash. 398, 227 p. 497, Frank Vizarro recovered of King county and the town of Issaquah $10,000 for personal injuries sustained by defective condition of the bridge over Issaquah creek on the boundary line between the town and the county. The Supreme Court of Washington affirmed the judgment.

This is taken from City of Goshen v. Meyers, 119 Ind. 196, 21 N. E. 657:

> "The bridge named in the complaint was constructed by Elkhart county, on what is known as the Lima state road, 27 rods east of the east end of Market street, in the city of Goshen, but within the corporate limits of said city. . . . The bridge had never been repaired, either by the county or city, and it had been out of repair and dangerous for more than one year prior to the injury complained of, of which fact the city had notice. Prior to the injury . . . the city of Goshen had taken charge of the Lima road within the city, and had graded it, as well as the streets in the addition to said city east of said bridge. . . . The common councils of cities are given the exclusive control and power over the streets, alleys, highways and bridges within the cities of this state. . . . It was the duty of the city of Goshen to keep the bridge under consideration in repair. . . .

"It is urged by counsel for the appellant that there is no finding that the city of Goshen had ever accepted the bridge or the public highway, and, therefore, it was not required to keep the same in repair. Our attention has not been called to any law requiring the city to make any formal acceptance of such bridge and highway, and we know of none. It was, perhaps, a sufficient acceptance of the same to include them within the corporate limits of the city. But there is a finding that the city did take charge of the public highway upon which the bridge was built, and graded it. As the bridge constitutes a part of such highway, we know of no rule by which they can be separated. The acceptance of the one ought to carry with it the acceptance of the other. . . . Judgment affirmed."

In the case of Lawrence v. Village of Channahon, 157 Ill. App. 560, a recovery was affirmed against the village for damage done an automobile by falling through a bridge within the village limits. The defense was that the village did not build the bridge, but that it was built by the state before the village was incorporated. The court held the village liable.

In the case of Eyler v. Allegany County, 49 Md. 257, 33 Am. Rep. 249, Eyler sought to recover for personal injuries sustained by a defective condition of a bridge across the C. & O. Canal. The defense of the county commissioners was that the canal company cut the highway in two when it constructed the canal and built the bridge to enable those using the highway to cross the canal, and that it was the duty of the canal company to keep the bridge in repair and not the duty of the county. The trial court sustained this defense on the part of the county, but, on appeal, the judgment was reversed, and it was held that the county could not in this way be discharged from its obligations to keep its highways in a safe condition for travel.

In the case of Town of Paintsville v. Com., 55 S. W. 915, 21 Ky. Law Rep. 1634, the town had been indicted for failing to keep in repair a bridge in the town. Johnson county had built this bridge, and, the question having arisen about the repair of it, the city, "for the purpose of ridding itself of any danger or damage to persons who might be injured by reason of the unsafe condition of said bridge, and for the further purpose of avoiding repairing said bridge, did cut said boundary so as to cut

said bridge out of the corporate limits of said town.''
Further in that opinion we said:

> ''Nor do we consider it material that the county
> opened the road and built the bridge connecting with
> the city street.  When a public way is opened through
> a city for the use of the public, and is accepted and
> used by the city, such way, and any bridge forming
> part of it, becomes a public way of the city; and, if
> necessary for the use of the citizens, such bridge
> must be kept in repair, and must not be suffered by
> the city to become and remain unsafe for travel.''

Thus it appears that it is the general rule, and is
the rule in this state, that a city is responsible for injury
received by one as a result of defective condition of a
bridge within the city.  The city, in an effort to escape
liability, had pleaded that this bridge was part of state
highway projects No. 5 and No. 30, and had therefore
been taken over by the state, but in the case of Shaver
et al. v. Rice, Mayor, et al., 209 Ky. 467, 273 S. W. 48, we
had a similar question before us, and in that opinion we
said:

> ''The enaction of the two sections of the state
> road law quoted above did not have the effect of re-
> pealing the statutes then existing authorizing cities
> and towns to construct and maintain their streets
> according to any of the plans then provided for by
> law.''

Moreover, section 4294, Kentucky Statutes, pro-
vides:

> ''Nothing contained in this chapter shall be con-
> strued to take from the jurisdiction, charge or con-
> trol of the council, trustees or any authority of any
> incorporated city, town or village, so much of any
> road, bridge landing or wharf, or any other things
> as by the laws now in force is exclusively under such
> jurisdiction, charge or control.''

The city cannot escape its responsibility for failure
to maintain this bridge in a reasonably safe condition,
even though the bridge was built by the county, or was
to be taken over and made a part of the state highway
system.  It was within the city.  Its streets were con-
nected with it.  It was a part of its streets.  It was used
by the public, and it cannot escape its obligation to keep
it in reasonable repair.  The court did not err when it

refused to give the city's peremptory instruction X based upon this theory of the case, nor did it err in refusing to give the city's instruction Z, which was based on the same idea. The city offered this further instruction, which the court declined to give:

"Unless you believe from the evidence that the plaintiff received no injuries other than the alleged injury which he claims to have received on the bridge, and that the disease germs which produced or caused his condition were not received through the air passages, tonsils, teeth or in any other manner, and that his illness was not and could not have been caused in any other way except from a wound which the plaintiff claims to have received on the bridge, then the law is for the defendant, and the jury ought to so find."

This was not error, for in the instruction given the court had, in its instruction No. 1, among other things, said:

"Unless you believe from the evidence that said bridge was out of repair as hereinbefore set forth, and that the injuries which he claims to have received and to have suffered from were solely caused and resulted from his leg going through said hole in said bridge, and that the said city, or its said officers or agents, were guilty of negligence as hereinabove stated, which resulted in his leg going through same, and being then and there injured as claimed, your findings should be for the defendant."

Further, the court had given this instruction on the measure of damage:

"If you find for the plaintiff, you should award him such sums in damages as will, in your discretion, according to the proof, fairly and reasonably compensate him for such physical pain and mental anguish as you may believe from the evidence he has suffered, and for such physical pain and mental anguish as you may believe from the evidence he will suffer, and for such permanent reduction and impairment of his power to earn money resulting to him as the sole and proximate result of his injuries complained of, not exceeding in all the sum of $50,000 which is the amount sued for."

In each instance the court required the jury to believe from the evidence that the plaintiff's condition resulted solely from this alleged injury in order to find for him. "As between an innocent and a wrongful cause, the law uniformly regards the latter as the proximate and legally responsible cause." See 17 C. J. p. 741. The case of Taylor Coal Co. v. Miller, 168 Ky. 719, 182 S. W. 920, is not authority to the contrary, for even in that case the court said that the jury should be told that, if they believed that the tuberculosis was wholly caused by and directly attributable to the injury he received, the jury should not diminish the finding, if any, in his behalf on account of that disease. There was no evidence here that this boy had not, previous to this accident, enjoyed good health. Dr. Owens testified that examinations made of the discharge from the wounds on this boy showed a mixed staphylococcus and streptoccus infection, and no tuberculosis. The city cannot escape, even though it had established that he was not robust, and was subnormal, and predisposed to disease. He did not have this disease, and "the law is that one may recover for any injury which . . . develops a latent one." See L. & N. R. Co. v. Kerrick, 178 Ky. 486, 199 S. W. 44.

This court affirmed a judgment in the case of Central Kentucky Natural Gas Co. v. Salyer, 164 Ky. 718, 176 S. W. 183, wherein a similar instruction was refused under similar facts. In the case of Hines, Director General, v. May, 191 Ky. 493, 230 S. W. 924, we again affirmed a judgment under similar circumstances, and where a similar instruction had been refused.

We have examined the case of L. & N. R. Co. v. Wilkins, 143 Ky. 572, 136 S. W. 1023, Ann. Cas. 1912D, 518, but are unable to find in that case support for the city's contention. The same is true of Central Kentucky Traction Co. v. Combs, 143 Ky. 529, 136 S. W. 1045; Rosebury v. Louisville R. Co., 168 Ky. 277, 181 S. W. 1117; Illinois Central R. Co. v. Jackson, 117 Ky. 900, 79 S. W. 1187, 25 Ky. Law Rep. 2087.

This suit was originally filed on January 31, 1923, and in that petition Carlo Lawson, suing by his father, Sam J. Lawson, as his next friend, sought to recover $20,000 for the boy's injuries. The boy continued to suffer, and on January 6, 1925, the petition was amended, this amendment being filed by the boy through his father as next friend, and by this amended petition the ad damnum was increased to $50,000. On January 18, 1926,

this boy's father was appointed guardian for the boy, and shortly thereafter he filed a petition, as guardian, to be made party plaintiff.

The city is contending that, if it is true that this boy's present condition is the result of injuries which he received on this bridge, the father had a right to sue and recover for the loss of services of this boy until the boy reached the age of 21, and that the boy was entitled to sue and recover for the impairment of his power to earn money thereafter; hence the city urges that the court erred in its instruction upon the measure of damage, and that this boy's recovery should be limited to his loss of earning capacity after he became 21. We have had this question before us several times. The leading case on the question is that of C. & O. R. Co. v. Davis, 58 S. W. 698, 22 Ky. Law Rep. 748. It was insisted there that a similar error had been made. That suit had been brought by the mother as guardian of her son, and we held that by so doing she had vested in him such right of action as might have been hers.

The city, in support of its contention, has cited the case of Helm v. Phelps, 157 Ky. 795, 164 S. W. 92, but that case is not in point, because that suit was not brought by one of the parents of the child, but was brought by his sister. It has also cited the case of L., H. & St. L. R. Co. v. Lyons, 156 Ky. 222, 160 S. W. 942; but that cannot give the city any comfort, because in that case the parents did nothing, and the court held that, where the father knew the son was suing to recover and did nothing, that was equivalent to waiving his cause of action for the benefit of his child. The city has also cited the case of Bong v. Webster, 217 Ky. 781, 290 S. W. 662; but it cannot get any comfort out of the Bong case, for in that case the child sued through his father as next friend, and the court held that by so doing the father had waived his cause of action in favor of his son. What we said in the case of C. & O. R. Co. v. Davis, supra, applies here. The court did not err in its instruction to the jury on the measure of damages. For other cases on this point see Akers v. Fulkerson, 153 Ky. 228, 154 S. W. 1101; C. & O. R. Co. v. Wilder, 72 S. W. 353, 24 Ky. Law Rep. 1821; Slaughter v. N., C. & St. L. R. Co., 90 S. W. 243, 28 Ky. Law Rep. 665; C., N. O. & T. P. R. Co. v. Troxell, 143 Ky. 765, 137 S. W. 543; L. & N. R. Co. v. Bryant, 200 Ky. 177, 252 S. W. 145.

Our last question is: Was this verdict excessive?

In the case of L. & A. R. Co. v. Cox's Adm'r, 104 S. W. 956, 31 Ky. Law Rep. 1214, we reversed a judgment because we regarded is as against the evidence. That judgment was for $2,500. When the case was retried, it resulted in a judgment for $12,500. It was again appealed, and the opinion can be found in 137 Ky. 388, 125 S. W. 1056. In affirming that judgment we said:

> "It being peculiarly the province of the jury to fix the amount, their finding should never be disturbed unless it is made clearly to appear that it could not have been based upon the evidence, but must have been the result of caprice, passion or prejudice."

We reviewed and discussed this question in the case of C. & O. R. Co. v. John's Adm'x, 155 Ky. 264, 159 S. W. 822, 50 L. R. A. (N. S.) 853. We upheld there a verdict of $25,000, and cited many cases in support thereof, which, of course, it is needless that we should cite again. We again reviewed and discussed this question in the case of C. & O. R. Co. v. Honaker, 190 Ky. 125, 226 S. W. 394, and there we upheld a verdict for $15,000, and reviewed and cited authorities in support of it, which, of course, we shall not cite here.

In L. & N. R. Co. v. Mitchell, 173 Ky. 622, 191 S. W. 465, we affirmed a judgment for $20,000 for injuries to a man's skull, jawbone, cheekbone, teeth, and ear.

In the case of C. & O. Ry. Co. v. Dixon, in our first opinion, which will be found in 212 Ky. 738, 280 S. W. 93, we reversed the judgment for other reasons, and declined to pass on the question of the alleged excessiveness of the verdict of $25,000, which Dixon had received for injuries that seem to us no greater than the injuries this boy has received. The case was retried and resulted in a verdict for $20,000, and, in our second opinion, which will be found in 218 Ky. 84, 290 S. W. 1064, that judgment was affirmed. We affirmed a $25,000.00 judgment in the case of Mealy v. Ewen, 225 Ky. 117, 7 S. W. (2nd) 823.

In C. & O. R. Co. v. Honaker, 190 Ky. 125, 226 S. W. 394, we said:

> "In recent years this court has been inclined to approve larger verdicts because of the increase in the cost of living and the decrease in the purchasing power of a dollar."

We again referred to this diminished purchasing power of money in Board of Trustees of Policemen's Pension Fund v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606, and in Robbins v. Jones, 211 Ky. 211, 277 S. W. 333, we did the same, and in the latter case we said, in referring to some of our former opinions:

"The opinions of this court then written are to be read in the light of the changing times and applied with a regard for the new conditions."

In L. & N. R. Co. v. Birochik, 207 Ky. 595, 269 S. W. 720, we said:

"The members of this court are not going to pretend to be more ignorant than the rest of men, or that matters of common knowledge are not also known to them."

We are part of the world in which we live. Into our lives there come those experiences that are common to all men. The diminished purchasing power of money is one of these. We cannot overlook those things we see on every hand, and, when we read the opinions cited in the light of our everyday experiences, we are unable to say that this verdict is excessive.

The judgment is affirmed.

The whole court sitting.